# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTIN J. WALSH, Secretary of Labor, U.S. Department of Labor,

    *Plaintiff,*

    v.

INTRA-NATIONAL HOME CARE, LLC, and DILLI ADHIKARI,

    *Defendants.*

No. 2:21-cv-01391-DSC

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD ............................................................................................. 7

ARGUMENT ........................................................................................................... 8

    I.    The Complaint's Bare-Bones Allegations Do Not State a Claim for Violations of the FLSA's Overtime Requirements. ................................. 8

    a.    The Elements of a "Willful" FLSA Overtime Violation. .......................... 8

    b.    The Complaint Does Not Plausibly Allege that the Direct Care Workers at Issue Are Defendants' "Employees" Under the FLSA. ...................... 9

    c.    The Complaint Does Not Plausibly Allege that the FLSA Applies. ..... 10

    d.    The Complaint Does Not Plausibly Allege that Defendants' Alleged Violations were "Willful." ........................................................................ 13

    II.    The Government Has Failed to Allege Facts to Support its Claim of FLSA Recordkeeping Violations. ........................................................... 14

    III.   The Government's Claims Against Mr. Adhikari are Unsupported..... 15

    IV.   The Government's Claim for Alleged Violations that Took Place Prior to October 15, 2019, Are Untimely............................................................. 18

    V.    The Government's Speculative Claims for Potential Violations Cannot Support Liability....................................................................................... 20

    VI.   The Government Has Not Alleged Any Violations of the FLSA's Minimum Wage Requirements. ........................................................... 20

CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Gaudin,* 2017 WL 4685548 (W.D. Pa. Oct. 18, 2017)............................ 16, 18

*Acosta v. Valley Hotel*, No. 4:17-CV-00113, 2017 U.S. Dist. LEXIS 203007
(M.D. Pa. Dec. 11, 2017) ........................................................................... 19

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)............................................................... 7, 13, 20

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ................................. 7, 14

*Dean v. Pac. Bellwether, LLC*, 996 F. Supp. 2d 1044 (D. N. Mar. I. 2014)............... 11

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.,* 683 F.3d 462 (3d
Cir. 2012) ...................................................................................................... 9, 15

*In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300 (3d Cir. 2010) .......................... 10

*Intra-National Home Care LLC, v. Department of Lab.,* 2:20-CV-1545-WSH
(W.D. Pa.)...................................................................................................... 1, 5

*Katz v. DNC Servs. Corp.*, 2018 WL 692164 (E.D. Pa. Feb. 2, 2018) ................. 11, 12

*Kehler v. Albert Anderson, Inc.*, 2017 WL 1399628 (D.N.J. 2017) ....................... 2, 10

*Lin v. Fada Grp. Inc.*, 2021 WL 4963283 (D.N.J. Oct. 25, 2021)...................... 2, 8, 13

*Livers v. Nat'l Collegiate Athletic Ass'n*, No. CV 17-4271, 2018 WL 2291027
(E.D. Pa. May 17, 2018) ................................................................................. 14

*Mackereth v. Kooma, Inc.*, 2015 WL 2337273 (E.D. Pa. May 14, 2015) ............ 15, 17

*Martin v. Selker Bros.,* 949 F.2d 1286 (3d Cir. 1991)................................................ 9

*Martinez v. Palace*, 414 F. App'x 243, 246 (11th Cir. 2011) ..................................... 12

*McLeod v. Threlkeld,* 319 U.S. 491 (1943)............................................................... 10

*Mell v. GNC Corp.,* No. CIV.A. 10-945, 2010 WL 4668966 (W.D. Pa. Nov. 9,
2010)................................................................................................................ 8

*Perez v. RSCR W. Va., Inc.,* 2:14-CV-48, 2014 U.S. Dist. LEXIS 201992 (N.D. W. Va. Oct. 6, 2014)............................................................................ 19

*Richardson v. Bezar,* 2015 WL 5783685 (E.D. Pa. Oct. 5, 2015) ............ 10, 15, 16, 17

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010)........................... 11, 19, 20

*Sheridan v. NGK Metals Corp.,* 609 F.3d 239 (3d Cir.2010)....................................... 7

*Souryavong v. Lackawanna Cty.,* 872 F.3d 122 (3d Cir. 2017)............................. 2, 13

*Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019) ......................................... 19

*Thompson v. Real Est. Mortg. Network*, 748 F.3d 142 (3d Cir. 2014) ............... 15, 18

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264 (11th Cir. 2006) ........ 10, 11, 12

*Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009)...................................... 17

*Tyger v. Precision Drilling Corp.*, 832 F. App'x 108 (3d Cir. 2020) ......................... 19

*Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) ................................... 10

*Wang v. Chapei LLC*, 2019 WL 3281617 (D.N.J. July 19, 2019) ............................ 12

**U.S. CODE**

29 U.S.C. § 202.......................................................................................................... 9

29 U.S.C. § 203.......................................................................................................... 10

29 U.S.C. § 207.................................................................................................. 8, 10, 12

29 U.S.C. § 211.......................................................................................................... 14

29 U.S.C. § 213............................................................................................................ 4

29 U.S.C. § 213.......................................................................................................... 14

29 U.S.C. § 255...................................................................................................... 3, 19

**REGULATORY MATERIAL**

29 C.F.R. § 552............................................................................................................ 4

**INTRODUCTION**

This civil enforcement action arises out of the Department of Labor's wage and hour investigation of Defendants Intra-National Home Care, LLC ("Intra-National"), a home care agency based in Pennsylvania, and its founder and CEO, Dilli Adhikari. The complaint alleges that Defendants engaged in widespread and "willful" violations of the overtime and record-keeping requirements of the Fair Labor Standards Act ("FLSA" or "the Act") over a nearly three-year period starting in June 2017. *See* Complaint, ECF No. 1 (Oct. 15, 2021) ("Compl."), ¶¶ 8–13.

As Intra-National has already alleged in a separate pre-enforcement challenge filed over a year ago, the government's theory of liability rests on a 2013 Labor Department rule that improperly reads out of existence the plain text of the FLSA and ignores basic economic realities; this case must ultimately fail because that rule is invalid under the Administrative Procedure Act. *See Intra-National Home Care LLC, v. Department of Lab.*, 2:20-CV-1545-WSH (W.D. Pa.).

Right now, however, what is before the Court is the government's failure to meet its pleading burden under Federal Rule of Civil Procedure 8(a)(2). The Complaint—which was filed only after the government used its compulsory process power to investigate Defendants for over a year, and which alleges what appear to be several thousand violations of the FLSA's overtime and record keeping requirements—is a mere seven pages long and is almost entirely devoid of all but the most conclusory allegations of wrongdoing.

In particular, the Complaint does not provide any factual allegations that would tend to show that the workers at issue were Defendants' employees under the

FLSA. And it fails to allege facts to support the necessary element that either (a) the workers at issue were engaged in interstate commerce or in the production of goods for interstate commerce or (b) were employed in an enterprise engaged in interstate commerce or the production of goods for interstate commerce. *See, e.g.*, *Kehler v. Albert Anderson, Inc.*, 2017 WL 1399628, at *4 (D.N.J. 2017).

The government's claims that Defendants acted "willfully" are also unsupported. "[A]t the motion to dismiss stage, 'it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation." *Lin v. Fada Grp. Inc.*, 2021 WL 4963283, at *4 (D.N.J. Oct. 25, 2021) (internal quotation marks and citation omitted). While the Complaint provides some general allegations about Defendants' billing and recordkeeping practices, it fails to allege any facts that would tend to show that Defendants were "aware[] of a violation of the FLSA overtime mandate." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 127 (3d Cir. 2017).

The complaint also fails to state a plausible case for holding Mr. Adhikari individually liable for the alleged FLSA violations. The only allegations about him are boilerplate and conclusory. Comp. ¶ 4. Nothing the government avers provides the necessary factual details to support its claim that Mr. Adhikari was so involved in the day-to-day management of the business that he can be held personally liable for the claimed violations.

Finally, many of the government's claims are untimely. The FLSA's general statute of limitations is two years, extended to three years if the violations were "willful." 29 U.S.C. § 255(a). The government filed this suit on October 15, 2021, and all its claims arising on or before October 15, 2019, are hence time barred. Further, even if the government had properly pled willful violations, the violations that it alleges took place between June 4, 2017, and October 15, 2018, are untimely and should be dismissed. And, because there is no way that the government could cure this defect through an amended pleading, Defendants respectfully request that the Court dismiss with prejudice all claims that accrued on or before October 15, 2018.

## BACKGROUND

This is one of nearly a dozen Department of Labor enforcement actions brought over the last year or so against mostly small homecare businesses in which the government is alleging overtime and recordkeeping violations of the FLSA. Defendants in this case are Pennsylvania-based Intra-National and its CEO, Dilli Adhikari.

Mr. Adhikari, who is Nepalese, came to the United States in 2011 as a refugee fleeing oppression in the Kingdom of Bhutan. He started Intra-National in 2013 to help his fellow former refugees, many of whom are elderly or disabled and speak little or no English. While these former refugees need in-home care, many cannot afford it or effectively obtain Medicaid reimbursements so that they can hire family members to provide the care. Without such care, many of these elderly or disabled individuals would have to seek care in institutions staffed by people with whom they cannot even communicate. Intra-National works as an intermediary, assisting those who want to

care for loved ones to register as "direct care workers" and assisting them with the processing of payroll paperwork under the complicated Medicaid reimbursement program.

Under Pennsylvania's Community HealthChoices Medicaid assistance program, Medicaid reimbursements for home care services do not include overtime pay. At the time the reimbursement program was set up, this aligned with the FLSA's plain text, which exempts companionship care and live-in care from its overtime requirements. *See* 29 U.S.C. § 213(a)(15) (exempting "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)"); 29 U.S.C. § 213(b)(21) (exempting "any employee who is employed in domestic service in a house-hold and who resides in such household"). Things changed in 2015, however, when a 2013 Labor Department rule went into effect. This rule sought to drastically narrow these statutory exemptions by forbidding so-called "third-party employers" from claiming these exemptions, which the rule purported to limit only to care recipients who themselves employ direct care workers. *See* 29 C.F.R. § 552.109(a).

This has threatened to decimate virtually all home-care providers who rely on Medicaid reimbursements. If the Labor Department prevails, it will leave many thousands of people without access to needed care. Fortunately for Intra-National, the tightknit nature of the Nepalese community allowed it to effectively structure its business model so that their service would not extend beyond mere payroll processing

and assistance with becoming direct care workers. These workers are thus employed by the family members they provide services to; they are not employees of Defendants.

Despite this, in 2020, the Labor Department began investigating Intra-National and Mr. Adhikari for potential overtime violations under the 2013 Rule. In response, Intra-National (and two other home care agencies who are not parties to this suit) filed a pre-enforcement challenge to the validity of that rule, asking that the rule be held unlawful and set aside under the Administrative Procedure Act and the Declaratory Judgment Act. *See Intra-National Home Care LLC v. Department of Lab.*, 2:20-CV-1545-WSH (W.D. Pa.). The government moved to dismiss that claim last spring, arguing that the suit was barred by the statute of limitations. *Id.*, Dkt. No. 30. Judge Hardy held oral argument on the motion to dismiss this past November, and the parties are awaiting a ruling.[1]

The government filed this enforcement suit on October 15, 2021, more than a year after Intra-National and its co-plaintiffs brought their pre-enforcement challenge. The Complaint alleges a sweeping array of overtime and record keeping violations of the FLSA over a nearly three-year period and with respect to nearly 800 alleged employees. *See generally* Compl.; *see also* Schedule A, Dkt. No. 1-2 (list of alleged employees). While the Complaint does not break out its claims into specific counts, it appears that the government is alleging several thousand individual FLSA

---

[1] Intra-National and the other plaintiffs in the pre-enforcement challenge have moved to consolidate this case with that earlier-filed challenge. *Intra-National Home Care LLC v*, 2:20-CV-1545-WSH (W.D. Pa.), Dkt. No. 59. That motion is fully briefed and awaiting a ruling by Judge Hardy.

violations, all of which stem from its allegation that Defendants willfully violated Sections 7 and 15(a)(2) of the FLSA by "employing their employees . . . for workweeks longer than those prescribed in Section 7 of the Act without compensating said employees for employment in excess of the prescribed hours at rates not less than one and one-half times their regular rates." Compl. ¶ 8.

Despite the breadth of the government's claims, the Complaint says very little about how the alleged violations actually took place. The government does not describe the nature of the work, the nature of the relationship between Defendants and the homecare workers at issue, how payments were made, what Defendants' revenues were, how any employee or Defendants' "enterprise" engaged in interstate commerce, or any well-pled facts to support its claim that Defendants' conduct was "willful," as opposed to merely negligent or innocent. The Complaint's descriptions of the alleged FLSA violations, moreover, are very general. It does not give even a single example of a particular instance where an employee worked more than forty hours in a given work week but was not properly paid overtime wages. Instead, it generally describes practices involving "certain" unspecified workers who in unspecified workweeks within the three-year period at issue allegedly were not properly paid overtime wages.

As explained below, these thread-bare allegations fail to state a claim and should be dismissed under Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir.2010).

This is a three-step process. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citing *Iqbal,* 556 U.S. at 675, 679). *First*, the court "tak[es] note of the elements [the] plaintiff must plead to state a claim." *Id. Second*, it identifies and excludes from its consideration allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id. Third*, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In general, the statute of limitations is properly raised as an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). However, the Third Circuit has held that the statute of limitations arguments may be raised in a Rule 12(b)(6) motion when the bar is apparent on the face of the complaint. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002); *Jackson v. Demaske*, Civil Action No. 20-1226, 2022 U.S. Dist. LEXIS 21401, at *15-16 (W.D. Pa. Feb. 7, 2022).

## ARGUMENT

**I.  The Complaint's Bare-Bones Allegations Do Not State a Claim for Violations of the FLSA's Overtime Requirements.**

### a.  The Elements of a "Willful" FLSA Overtime Violation.

To prevail on a claim for a violation of the FLSA's overtime provisions, the government has the burden of demonstrating the following three elements: (1) that the relevant worker was an "employee" employed by Defendants; (2) that the employee or Defendants' "enterprise" was engaged in interstate commerce or the production of goods for interstate commerce; and (3) that the employee "worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty." *Mell v. GNC Corp.*, No. CIV.A. 10-945, 2010 WL 4668966, at *5 (W.D. Pa. Nov. 9, 2010); 29 U.S.C. § 207(a)(1). When, as here, the government alleges that the FLSA violations were "willful," it must also "put forward at least some evidence of the employer's awareness of a violation of the FLSA overtime mandate." *Souryavong*, 872 F.3d at 127. Thus, "at the motion to dismiss stage, 'it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation." *Lin*, 2021 WL 4963283, at *4 (internal quotation marks and citation omitted).

As explained below, the government has failed to allege sufficient facts to establish at least three of these elements.

**b. The Complaint Does Not Plausibly Allege that the Direct Care Workers at Issue Are Defendants' "Employees" Under the FLSA.**

The complaint is very shy about why the government thinks that the homecare workers listed in "Schedule A" attached to the Complaint were Defendants' employees. Most of the allegations making this claim do not provide any factual support at all, and the government's only direct allegation on this element is a quintessential "bare-bones" recitation of a statutory element:

> Defendants employ persons in Pennsylvania in domestic service for profit, which affects commerce per Section 2(a)(5) of the Act, 29 U.S.C. § 202(a)(5). Intra-National's employees employed as direct care workers ('DCWs') or caregivers (collectively, 'employees') provide in-home care services to Intra-National's clients within Pennsylvania.

Compl. ¶ 7. The nature of this work receives no further elaboration, nor does the government explain how or why it believes that this work was performed within an employment relationship with Defendants. For example, paragraph 4 states that Mr. Adhikari was engaged in "supervising employees, hiring and firing employees, setting their work schedules, and setting their pay rates," but the Complaint does not support these conclusory assertions with any facts. *Id.* ¶ 4. Significantly, the Complaint contains no description of the nature of the alleged "supervis[ion]" or any examples or descriptions of either Defendant doing any actions beyond setting pay rates.

This is insufficient. Whether someone is an "employee" within the meaning of the FLSA is a fact-intensive inquiry focused on the "economic realities" of the relationship. *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991). Beyond

conclusory allegations about Mr. Adhikari's involvement and generalized descriptions of how Defendants set pay rates, the Complaint does not articulate any "economic realities" that would support a conclusion that the workers at issue were Defendants' "employees." Certainly, the key aspects of control or supervision are absent. Indeed, the Complaint is so threadbare that Defendants lack even proper notice of the government's theory. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n.18 (3d Cir. 2010) ("The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim.").

Without "employees" there can be no FLSA liability, and the Complaint should be dismissed. *See Richardson v. Bezar*, 2015 WL 5783685, at *2 (E.D. Pa. Oct. 5, 2015) ("The Complaint fails to include sufficient factual content for the Court to properly apply the *Enterprise* test and take into account the total employment situation and the economic realities of the work relationship between Plaintiffs and Defendant.").

### c.  The Complaint Does Not Plausibly Allege that the FLSA Applies.

The Complaint also fails to establish that the workers at issue are covered by the FLSA at all. Congress's intent with the FLSA was "to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943)); *accord Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) ("Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states."). The FLSA's coverage is thus

10

limited only to "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); *see also Kehler v. Albert Anderson, Inc.*, 2017 WL 1399628, at *4 (D.N.J. 2017). The FLSA defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). The government has not pled facts that, if true, would establish either basis for FLSA coverage.

1.   ***Employee Participation in Interstate Commerce***. "To demonstrate eligibility for individual coverage, the employee 'must be directly participating in the actual movement of persons or things in interstate commerce.'" *Katz v. DNC Servs. Corp.*, 2018 WL 692164, at *4 (E.D. Pa. Feb. 2, 2018) (quoting *Thorne*, 448 F.3d at 1266). "This strict requirement effects the [FLSA's] legislative purpose to leave local business to the protection of the state." *Id.* (quoting *Dean v. Pac. Bellwether, LLC*, 996 F. Supp. 2d 1044, 1048 (D. N. Mar. I. 2014).

Nothing in the Complaint even begins to satisfy this "strict requirement." As with its assertions about employment, the Complaint's allegations on this point are formulaic recitations of the statutory standard with no supporting facts. Paragraph 6, for example, alleges the following:

> At all times relevant herein, Defendants have employed, and are employing, employees in and about their place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods

11

> or materials that have been moved in or produced for com-
> merce.

Compl. ¶ 6; *see also id.* ¶ 8 (making similar allegations)

The only allegation that even attempts to describe the work at issue—"direct care work[]" and "cargiv[ing]," Compl. ¶ 7—*undermines* the government's claims. "Direct care work" and "in-home" "caregiving" do not produce any goods and are quintessentially local and intra-state in nature. *Cf. Martinez v. Palace*, 414 F. App'x 243, 246 (11th Cir. 2011) (cook not "engaged in commerce"); *Wang v. Chapei LLC*, 2019 WL 3281617, at \*4 (D.N.J. July 19, 2019) (restaurant workers not "engaged in commerce"); *Thorne*, 448 F.3d at 1266 (workers engaged in mold and water damage restoration for residential and commercial properties did not "engage in commerce").

2.   ***Enterprise Engaged in Commerce***. The same flaws apply to the government's assertion of "enterprise coverage," which applies if the "enterprise" at issue employs other people "engaged in commerce or in the production of goods for commerce." *Katz*, 2018 WL 692164, at \*5 (quoting 29 U.S.C. § 207(a)(1)). The government's allegations on this score are an almost verbatim recitation of the statutory requirement:

> At all times relevant herein, Defendants have employed, and are employing, employees in and about their place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

Compl. ¶ 6.

12

Again, to the extent that other allegations bear on this issue, they tend to show the *opposite* of the government's claim. Indeed, the Complaint repeatedly emphasizes the local, *intra*-state nature of Defendants' business. *See* Compl. ¶ 4 ("Mr. Adhikari directed employment practices within Pennsylvania and has directly or indirectly acted in the interest of Intra-National in relation to its employees within Pennsylvania."); ¶ 6 (alleged employees worked "in and about [Defendants'] place of business" in Pennsylvania); ¶ 7 ("Defendants employ persons in Pennsylvania in domestic service . . . . [They] provide in-home care services to Intra-National's clients within Pennsylvania.").

### d. The Complaint Does Not Plausibly Allege that Defendants' Alleged Violations were "Willful."

As noted above, "at the motion to dismiss stage, it is insufficient to merely assert that the employer's conduct was willful; the Court must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation." *Lin*, 2021 WL 4963283, at *4 (internal quotation marks and citation omitted). Crucially, the allegations must include more than just facts that would demonstrate a violation of the FLSA, they must also plausibly state facts that, if supported by evidence, would tend to show of "the employer's awareness of a violation of the FLSA overtime mandate." *Souryavong*, 872 F.3d at 127.

The nearest the Complaint comes to this is an allegation that Defendants were "aware of the overtime requirement" and "intentionally manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality paying the same rate for all hours." Compl. ¶ 13. These alleged facts may be

"consistent with [the] defendant's liability," *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679), but they are conclusory and do not give rise to a plausible inference that Defendants *knew that these adjustments were forbidden*, rather than being based on a negligent or innocent belief that such adjustments were a permissible compliance strategy or a made out of a desire to make sure payments matched the government reimbursement rate for those hours . *Cf. Livers v. Nat'l Collegiate Athletic Ass'n*, No. CV 17-4271, 2018 WL 2291027, at *8 (E.D. Pa. May 17, 2018) (granting motion to dismiss allegations of "willful" violations of the FLSA because "Plaintiff does not allege any facts regarding any [defendant] having knowledge of any potential duty to compensate Plaintiff, or even disregarding such a duty").

## II.   The Government Has Failed to Allege Facts to Support its Claim of FLSA Recordkeeping Violations.

The government's allegations of recordkeeping violations span a mere two paragraphs. The first is conclusory and therefore must be excluded from the Court's analysis. *Connelly*, 809 F.3d at 787.[2] The second alleges recordkeeping violations that occurred "due to [Defendants'] practice of lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime." Compl. ¶ 15. In other

---

[2] It alleges: "Defendants violated the provisions of Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c) and 215(a)(5), in that Defendants failed to make, keep, and preserve adequate and accurate records of their employees, which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516." Compl. ¶ 14.

words, the recordkeeping allegations are completely contingent on the claim that Defendants—through undescribed mechanisms and at unspecified times within a nearly three-year period—committed FLSA overtime violations. As the government has not stated a claim for overtime violations, the recordkeeping claims too should be dismissed.

## III.   The Government's Claims Against Mr. Adhikari are Unsupported.

The Complaint wrongly lumps Intra-National and Mr. Adhikari together without alleging sufficient facts to establish that Mr. Adhikari was a joint employer individually subject to FLSA liability. While it is true that a company's owners, officers, or supervisory personnel may constitute "joint employers" for purposes of liability under the FLSA, merely being an owner or having a certain title is insufficient to make someone a "joint employer." *See Mackereth v. Kooma, Inc.*, 2015 WL 2337273, at *6 (E.D. Pa. May 14, 2015)*; Richardson*, 2015 WL 5783685, at *2. Rather, individual liability exists *only* when the individual exercised sufficient supervisory authority over the employees and was responsible for the alleged violations while acting in the employer's interest. *Mackereth*, 2015 WL 2337273, at *6 (quoting *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 154 (3d Cir. 2014)). An individual has supervisory authority when the supervisor independently exercises control over the work situation. *Id.*

Much like with the question of whether a worker is an "employee," the test for whether someone is a "joint employer" turns on the "economic realities" of the situation. Courts look to these touchstones in performing that inquiry  "(1) authority to

15

hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d at 469. The Complaint says virtually nothing about any of these factors beyond a conclusory allegation that Mr. Adhikari "directed employment practices within Pennsylvania and has directly or indirectly acted in the interest of Intra-National in relation to its employees within Pennsylvania at all relevant times herein, including supervising employees, hiring and firing employees, setting their work schedules, and setting their pay rates." Compl. ¶ 4.

This is insufficient. Courts routinely dismiss FLSA claims against owners and corporate officers when the complaint contains only conclusory allegations that these *Enterprise* factors are met and lacks any specific *factual* allegations showing that the individual exercised the necessary supervisory authority. For example, in *Acosta v. Gaudin*, the court dismissed the Labor Department's complaint against the defend-ant's corporate officer because it "fail[ed] to reach the requisite level of particularity as to what this Defendant did (and when and how he did it) to support individual liability as to him[.]" 2017 WL 4685548, at *5 (W.D. Pa. Oct. 18, 2017). In doing so, the Court rejected the government's argument that individual liability could be in-ferred from one's title, ownership, or control. *Id.* The Court explained that this was "an oversimplification of the 'economic reality' test, which requires the Court to look

16

at the totality of the circumstances rather than [at] 'technical concepts of the employment relationship in order to determine the existence of individual liability." *Id.*

Similarly, in *Richardson*, the court dismissed FLSA claims against the alleged owner and president of the company because the complaint contained only conclusory allegations to support liability. 2015 WL 5783685, at *1–*2. There, the complaint alleged that the individual defendant "acted in the interest of an employer towards Plaintiffs and other similarly situated employees at all material times, including without limitation directly or indirectly controlling the terms of employment of Plaintiffs and other similarly situated employees . . . [and that he] manag[ed], own[ed] and/or operat[ed] [the company] . . . ." *Id.* at *2. The complaint also alleged that he "regularly exercised the authority to hire and fire employees, determine the work schedules of employees, set the rate of pay of employees, and control the finances and operations of [the company]." *Id.* (quotation marks omitted).

The court granted the motion to dismiss because "[o]ther than these general allegations, the Complaint is void of any factual allegations by which we can conclude that Defendant is Plaintiffs' joint employer under the FLSA." *Id.*; *see also Mackereth*, 2015 WL 2337273, at *7 (dismissing FLSA complaint against individual defendants where complaint contained only conclusory allegations that the defendants were "corporate officers who 'exercise sufficient control over the labor policies and practices complained of herein to be considered the employers of Plaintiffs' within the meaning of the FLSA"); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) ("mere boilerplate allegations that an individual meets the various prongs of the economic

17

reality test stated solely upon information and belief and without any supporting details—essentially 'a formulaic recitation of the elements of a cause of action'—are insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA.").[3]

Like the cases just discussed, the allegations against Mr. Adhikari are conclusory and boilerplate. Despite having investigated the matter for over a year, the government does not plead any *facts* that, if true, would tend to show Mr. Adhikari's involvement or control of these alleged unlawful employment practices. As in *Gaudin*, the government has failed to allege with the "requisite level of particularity . . . what this Defendant did (and when and how he did it) to support individual liability as to him[.]" 2017 WL 4685548, at *5.

## IV.   The Government's Claim for Alleged Violations that Took Place Prior to October 15, 2019, Are Untimely.

The government alleges that Defendants violated the FLSA an unspecified number of times "during the time period from at least June 4, 2017, through at least May 31, 2020." Compl. ¶ 9; *accord id.* at 5 (prayer for relief). Many of these claims are untimely.

---

[3] By way of contrast, in *Thompson v. Real Estate Mortgage Network*, the Third Circuit held that the complaint sufficiently alleged individual liability because there were specific factual allegations that (1) "[w]hen a work or personnel issue arose . . . that Thompson's immediate supervisor could not address alone, 'the supervisor would consult with, among others, [the individual defendants]" and (2) the plaintiff specifically asked one of the individual defendants about overtime compensation, and the individual defendant responded that he "'did not pay overtime to underwriters.'" 748 F.3d at 153-54.

"Under the FLSA, willful violations are entitled to a three-year statute of limitations, while non-willful violations are entitled to only a two-year limitations period." *Tyger v. Precision Drilling Corp.*, 832 F. App'x 108, 115 (3d Cir. 2020) (citing 29 U.S.C. § 255(a)). Claims that fall outside the applicable two or three-year window are "forever barred." 29 U.S.C. § 255(a).

As the Third Circuit has explained, "a new and separate cause of action for unpaid overtime wages accrue[s]" on "each payday where" an employer "failed to pay its employees proper wages." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 154 (3d Cir. 2019) (cleaned up). Courts have thus routinely dismissed claims arising from paydays alleged to have taken place more than two (or, if the alleged violation was "willful," three) years before the complaint was filed. *See, e.g.*, *Acosta v. Valley Hotel*, No. 4:17-CV-00113, 2017 WL 6311852, at *2–*3 (M.D. Pa. Dec. 11, 2017); *Perez v. RSCR W. Va., Inc.*, 2:14-CV-48, 2014 U.S. Dist. LEXIS 201992, at *9–*10 (N.D. W. Va. Oct. 6, 2014).

Here, the alleged violations that accrued on or before October 15, 2019—two years prior to when the government filed this suit—are thus untimely. Alternatively, even if this Court were to hold that the government had adequately pled "willful violations" of the FLSA (which it has not), the statute of limitations would still require dismissal of all of the government's claims that accrued on or before October 15, 2018. Further, as there is no way that the government could properly plead claims that accrued more than three years before it filed suit, and all claims that arose on or before October 15, 2018, should be dismissed with prejudice.

19

V. **The Government's Speculative Claims for Potential Violations Cannot Support Liability.**

The Complaint's prayer for the relief asserts that "[a]dditional amounts of back wages and liquidated damages *may also be owed* to certain current and former employees. . . and *may be owed* to certain current and former employees presently unknown to the Secretary . . . who *may be identified* during this litigation." Compl. at p.5 (emphases added). Such "[a]llegations that are 'merely consistent with a defendant's liability' or show the 'mere possibility of misconduct' are not enough." *Santiago*, 629 F.3d at 133 (quoting *Iqbal*, 556 U.S. at 679).

VI. **The Government Has Not Alleged Any Violations of the FLSA's Minimum Wage Requirements.**

The government's prayer for relief asks this Court to hold Defendants liable "for unpaid minimum wage . . . compensation to certain of Defendant's current and former employees." Compl. at p.5. Similarly, it seeks injunctive relief "restraining Defendants . . . from withholding the amount of unpaid minimum wages . . . found due defendants' employees . . . ." *Id.* at p.6. The Complaint, however, contains no allegations that Defendants failed to comply with the FLSA's minimum wage requirements, much less any well-pled facts to support such a claim. The government's minimum wage claims should therefore be dismissed. *See, e.g.*, *Santiago*, 629 F.3d at 133.

20

**CONCLUSION**

For these reasons, the government's complaint should be dismissed in its entirety. All claims that accrued prior to October 15, 2018, moreover, should be dismissed with prejudice as untimely.

Dated: February 17, 2022                    Respectfully submitted,


                                             /s/ Bruce C. Fox
                                             Bruce C. Fox (PA 42576)
                                             George C. Thompson (PA 316626)
                                             OBERMAYER REBMANN
                                             MAXWELL & HIPPEL LLP
                                             525 William Penn Place, Suite 1710
                                             Pittsburgh, PA 15219
                                             bruce.fox@obermayer.com

                                             *Counsel for Defendants*