## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br><br>    v.<br><br>INTRA-NATIONAL HOME CARE, LLC, AND<br>DILLI ADHIKARI<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 2:21-cv-1391<br>)<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>) |

### PLAINTIFF SECRETARY OF LABOR'S RESPONSE IN OPPOSITION TO DEFENDANTS INTRA-NATIONAL HOME CARE, LLC AND DILLI ADHIKARI'S MOTION TO DISMISS

Plaintiff Secretary of Labor's ("Plaintiff" or "Secretary") Complaint against Defendants Intra-National Home Care, LLC ("Intra-National") and Dilli Adhikari (collectively, "Defendants") alleges, in clear and factual manner, willful violations of the Fair Labor Standards Act ("FLSA" or "the Act"). The Third Circuit Court of Appeals has held that such factual allegations are sufficient for FLSA complaints, and courts routinely deny motions to dismiss complaints alleging similar facts. The premise of Defendants' entire motion – that the Secretary's Complaint contains merely "conclusory" allegations – is simply wrong. The Complaint contains numerous factual allegations that Defendants either ignore or mischaracterize as "boilerplate" and that are more than sufficient to state a cause of action under the FLSA.

The Complaint alleges that Defendants operated a domestic homecare business and willfully failed to pay overtime premium pay to their employees employed as direct care workers ("DCWs") or caregivers. The Complaint sufficiently alleges that an employment relationship between Defendants and the DCWs existed because it states that Defendant Adhikari, as the Chief

1

Executive Officer and owner of Intra-National, exerted the requisite control over the DCWs, such as supervising them.  As employees of a domestic homecare business, the FLSA covers the affected employees under the plain text of Section 2(a)(5) of the Act, 29 U.S.C. § 202(a)(5).

Furthermore, the Complaint sufficiently alleges that Defendants' violations of the FLSA were willful.  Under *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), a violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the FLSA or showed reckless disregard for the legality of its conduct.  The Complaint alleges that Defendants knew about the overtime requirement and chose to either simply pay straight time for all hours worked or intentionally manipulate employees' regular rates to create the appearance of paying an overtime premium while in reality paying the same rate for all hours.  These are straightforward allegations of intentional violations of the FLSA.  It is difficult to imagine a more classic example of willfulness.  At a minimum, these allegations demonstrate a reckless disregard for complying with the FLSA.

The Complaint also sufficiently alleges that Defendants violated the recordkeeping provisions of the FLSA.  The Complaint alleges that Defendants are covered employees and that they violated statutory and regulatory requirements, under 29 U.S.C. § 211(c) and 29 C.F.R. §§ 516.2(a)(6), (8), (9), (10), to make, keep, and preserve accurate records – specifically, of employees' regular hourly rates of pay, total weekly straight-time earnings, total weekly overtime premium pay, and total deductions.  Again, the alleged straight time for overtime practice and regular rate manipulation are classic examples of these recordkeeping violations.  Defendants cite no cases holding that more detailed allegations of this common FLSA violation are required.

Finally, the Complaint states that it seeks unpaid overtime compensation and liquidated damages due to the individuals listed on Schedule A for the time period of June 4, 2017, through

at least May 31, 2020.  The Complaint in this action was filed on October 15, 2021 and the Secretary alleges a willful violation, which extends the statute of limitations to three years prior to the filing of the Complaint.  The Secretary acknowledges that even though Defendants were likely violating the FLSA prior to that date, he cannot recover back wages and liquidated damages for unpaid overtime prior to October 15, 2018 (*i.e.*, three years prior to the filing of the Complaint).  However, this does not warrant the dismissal of the entire Complaint.  Moreover, the Secretary has properly alleged a claim for a continuing violation of the FLSA and may pursue any violations after May 31, 2020.  Therefore, Defendants have not provided this Court with any basis to dismiss the Secretary's Complaint and the Secretary respectfully requests that the motion be denied.

## I.      Statement of Facts

On October 15, 2021, the Secretary filed his Complaint in this action against Defendants. ECF 1.  In the Complaint, the Secretary alleges that the Defendants willfully violated the FLSA and seeks an injunction against Defendants from FLSA violations and a judgment against them for back wages and liquidated damages owed to Defendants' employees who worked in Pennsylvania. Compl. at 1, ¶ 8.  The Secretary alleges that "Intra-National is engaged in a domestic homecare business" and that Intra-National and Mr. Adhikari are in the business of "providing home health care service[.]"  *Id.* at ¶ 3.  The Secretary also alleges that "Mr. Adhikari is the Chief Executive Officer and owner of Intra-National" and that he

> directed employment practices within Pennsylvania and has directly or indirectly acted in the interest of Intra-National in relation to its employees within Pennsylvania at all relevant times herein, including supervising employees, hiring and firing employees, setting their work schedules, and setting their pay rates.

*Id.* at ¶ 3.

The Complaint alleges that Defendants employ employees "in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and that "Defendants have had annual gross volume sales made or business done of not less than $500,000,[.]" *Id.* at ¶ 6.  The Complaint also alleges that "Defendants employ persons in Pennsylvania in domestic service for profit, which affects commerce per Section 2(a)(5) of the Act, 29 U.S.C. § 202(a)(5)." *Id.* at ¶ 7.

The Complaint also alleges that, from at least June 4, 2017, through at least May 31, 2020, Defendants violated the overtime provisions of the FLSA by failing to pay premium pay for hours worked over 40 in a workweek. *Id.* at ¶¶ 8-9. The Complaint alleges that the Defendants' employees worked overtime. The Complaint states that employees worked over forty hours per workweek and that many employees worked in excess of fifty hours per workweek. *Id.* at ¶ 9. The Complaint alleges that Defendants violated these FLSA overtime provisions in three very specific ways: 1) paying DCWs at straight regular rates for overtime hours worked (*Id.* at ¶ 10); 2) manipulating employees hourly rates by reducing such rates in workweeks in which DCWs worked overtime such that the DCWs always received the equivalent of their typical straight hourly rates instead of a *bona fide* overtime premium rate; and 3) making purported deductions to DCWs' paychecks that cancelled out any overtime premium pay and caused them to only receive their regular rate for all hours worked including overtime hours (*Id.* at ¶ 12).

The Complaint alleges that these violations were willful by alleging that these same violative acts were done with the intent of avoiding paying DCWs overtime premium pay. *Id.* at ¶ 13.  Indeed, the Complaint alleges that "Defendants intentionally manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality paying the

same rate for all hours." *Id.* ¶ 13.  The Complaint also alleges that Defendants simply paid certain other employees straight time for all overtime hours worked, and not the required time and one-half premium rates, despite being aware of the overtime requirement.  *Id.*

The Complaint also alleges that Defendants violated the recordkeeping provisions of the FLSA, 29 U.S.C. §§ 211I and 215(a)(5), by failing to make, keep, and preserve adequate and accurate records of their employees, which they maintained as prescribed by the regulations issued and found at 29 C.F.R. Part 516.  *Id.* at ¶ 14.  As support for this allegation of a recordkeeping violation, the Complaint alleges that due to their practice of lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime, Defendants failed to keep and preserve payroll records for employees for at least three years, including accurate records of employees' regular hourly rates of pay, total weekly straight-time earnings, total weekly overtime premium pay, and total deductions. 29 C.F.R. §§ 516.2(a)(6), (8), (9), (10).  *Id.* at ¶ 15.

As relief for these alleged FLSA violations, the Complaint seeks, among other things, a permanent injunction against Defendants prohibiting further FLSA violations, unpaid overtime compensation[1] due to the current and former employees listed on the Schedule A attached to the Complaint, and an equal amount in liquidated damages owed to those same individuals.  *Id.* at 5-6.  In addition to the individuals already listed on Schedule A, the Complaint seek back wages and liquidated damages that may also be owed to certain current and former employees of Defendants listed in the attached Schedule A for violations continuing after May 31, 2020, and may be owed to certain current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to Schedule A. *Id.*

---

[1] Although the Complaint also has a passing reference to unpaid minimum wages in the prayers for relief, the Secretary is not currently alleging a violation of the minimum wage provisions of the FLSA or seeking any unpaid minimum wage compensation.  However, the Secretary reserves the right to add such allegations and seek such relief if discovery uncovers minimum wage violations.

II.     **Legal Argument**

    *A.  Standard Of Review*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of pleadings under Rule 8(a)(2). *Andrews v. Monroe Cnty. Transit Auth.*, 523 F. App'x 889, 891 (3d Cir. 2013). Under Rule 8(a)(2), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quotation marks omitted). On a Rule 12(b)(6) motion, the Court should not consider extraneous materials but should only consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." *Davis v. Abington Memorial Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (alteration in original) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013)). Plaintiff's Complaint contains sufficient allegations, when viewed in the light most favorable to Plaintiff, to establish that Defendants' willfully failed to properly compensate covered employees for overtime hours worked and failed to properly record wages due.

*B.  The Complaint Sufficiently Pleads An Employment Relationship Between Both Defendants And The Direct Care Workers They Employ.*

The FLSA "is part of the large body of humanitarian and remedial legislation" that is to be "liberally interpreted." *Brock v. Richardson,* 812 F.2d 121, 123 (3d Cir. 1987).  Congress intended the FLSA to benefit employees.  *In re Cargill Meat Solutions*, 632 F. Supp. 2d 368, 377 (M.D. Pa. 2008).  The FLSA is a remedial statute designed to ensure "a fair day's pay for a fair day's work." 29 U.S.C. § 202(a); 81 Cong. Rec. 4983 (1937) (message of President Roosevelt).

The FLSA has broad definitions of "employee," "employer" and "employ," which are necessarily broad to effectuate the remedial purposes of the Act. *See United States v. Rosenswasser*, 323 U.S. 360, 362-63 (1945); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an employee as "any individual employed by an employer."  29 U.S.C. § 203(e)(1). Under the FLSA, to employ means "to suffer or permit to work."  29 U.S.C. § 203(g).  "Courts have interpreted § 3's terms broadly in order to better effectuate the statute's sweeping remedial objectives."  *Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 788 (W.D. Pa. 2013).

The FLSA defines employer "expansively" and "with striking breadth."  *In re Enterprise Rent-A-Car*, 683 F.3d 462, 467 (3d Cir. 2012) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).  "The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'"  *In re Enterprise Rent-A-Car*, 683 F.3d at 467.  This broad definition of employer means that, in addition to a corporate or other business entity, owners, officers, or supervisory personnel may be "employers."  *See, e.g., Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir.

2014). "Individuals acting in a *supervisory* capacity may be liable in their individual capacities as an employer under the FLSA." *A-1 Mortg. Corp.*, 934 F. Supp. 2d at 788 (emphasis added).

Likewise, the statutory definition of "employee" is "exceedingly broad[.]" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985). Indeed, the FLSA uses the term "employee" more broadly than it is used in any other statute. *United States v. Rosenwasser*, 323 U.S. 360 (1945); *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590 (1941) (the FLSA "must not be interpreted in a narrow, grudging manner," but rather consistent with its remedial and humanitarian purpose). The Supreme Court has observed that the FLSA's definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) ("[I]n determining who are 'employees' under the Act, common law employee categories or employer-employee classifications under other statutes are not of controlling significance.").

In determining whether someone is an employee under the FLSA, the "economic reality rather than technical concepts is to be the test of employment." *In re Enterprise Rent-A-Car*, 683 F.3d at 467 (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). The Third Circuit utilizes the test out-lined in *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376 (3d Cir. 1985), to determine employee status under the FLSA. In *DialAmerica*, the Third Circuit used six factors to determine whether a worker is an employee under the FLSA.

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered required a special skill; 5) the degree of permanence of the working relationship; [and] 6) whether the

8

> service rendered is an integral part of the alleged employer's
> business.

*Id.* (quoting *Donovan v. Sureway Cleaners*, 656 F.2d 1368 (9th Cir. 1981)).  Courts frequently deny motions to dismiss where the complaint alleges that defendants ***supervise*** the employees. *See Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. CV1817233KMJBC, 2021 WL 941875, at *7 (D.N.J. Mar. 11, 2021); *DiFlavis v. Choice Hotels Int'l, Inc.*, No. CV 18-3914, 2019 WL 1505860, at *6 (E.D. Pa. Apr. 5, 2019); *Acosta v. SX Mgmt., LLC*, No. CV 17-880, 2018 WL 1598618, at *3 (W.D. Pa. Mar. 15, 2018), *report and recommendation adopted*, No. CV 17-880, 2018 WL 1586429 (W.D. Pa. Apr. 2, 2018); *Davis v. Abington Mem'l Hosp.*, Nos. 09–cv–5520, 2012 WL 3206030, at *4 (E.D.Pa. Aug.7, 2012)  ("The Third Amended Complaint alleges that Plaintiffs ... worked as RNs at Defendant Mercy Philadelphia Hospital, and that Plaintiffs' direct supervisors at Mercy Philadelphia Hospital supervised their work and were the individuals to whom they reported each day. It further alleges that Defendant Mercy Catholic Medical Center is the entity from whom Plaintiffs receive their paychecks.... These allegations are sufficient to state a claim that Defendants ... Mercy Catholic Medical Center and Mercy Philadelphia Hospital were Plaintiffs' employers.").  Moreover, "[t]he Third Circuit has held that allegations regarding individual supervisory authority need not be detailed or extensive to survive a motion to dismiss."  *SeYoung Ra v. Gerhard's, Inc.*, No. CV 17-5211, 2019 WL 95473, at *5 (E.D. Pa. Jan. 3, 2019) (citing *Thompson*, 748 F.3d at 153).

The Secretary's Complaint in this action contains sufficient allegations to establish that both Defendants are "employers" under the FLSA and that they employ "employees."  The Complaint alleges that Mr. Adhikari "directed employment practices within Pennsylvania and has directly or indirectly acted in the interest of Intra-National in relation to its employees within Pennsylvania at all relevant times herein, including supervising employees, hiring and firing

employees, setting their work schedules, and setting their pay rates." Compl. at ¶ 4. The Complaint alleges that Mr. Adhikari was the owner of Intra-National and served as its Chief Executive Officer. *Id.* Therefore, any allegations of control over the employees can be imputed from him to Intra-National. The Complaint also alleges that Defendants paid a straight hourly rate, which is typical of an employment relationship and not indicative of the opportunity for profit and loss. *Id.* at ¶ 10. The Complaint also alleges that Defendants were engaged in a domestic homecare business" and that Intra-National and Mr. Adhikari are in the business of "providing home health care service[.]" *Id.* at ¶ 3. As such, the DCWs are integral to Defendants' business because they provide the actual services at the heart of Defendants' business. These allegations are sufficient to show an employment relationship between Defendants and the affected workers listed on Schedule A.

In an attempt to undermine these factual allegations, Defendants mischaracterize them and the standard for reviewing them as sufficient at the pleading stage. Defendants seek to characterize these allegations as conclusions of law. They are not. These allegations are the facts that support the legal conclusion that Defendants are "employers" and that DCWs are "employees." These allegations of facts are sufficient to establish these legal conclusions at this stage of the proceedings. Courts have held that these facts are sufficient to establish an employment relationship with respect to both the corporate entity and an individual defendants. *SeYoung Ra*, No. CV 17-5211, 2019 WL 95473, at *6 (denying motion to dismiss because complaint plead similar allegations of control regarding individual defendants). Moreover, Defendants seek to hold the Complaint to an exacting standard and require the Secretary to plead a fact relevant to every factor of the economic realities test. This is the type of analysis required for a motion for summary judgment or judgment following trial, not on a motion to dismiss. *SX*

*Mgmt., LLC*, No. CV 17-880, 2018 WL 1598618, at *3.  Likewise, Defendants seek to require

the Complaint to list specific examples of Defendants' supervision over the DCWs.  However,

Defendants cite to no case law supporting this requirement.

Defendants' reliance on *Acosta v. Gaudin*, 2017 WL 4685548 (W.D. Pa. Oct. 18, 2017)

and *Richardson v. Bezar*, 2015 WL 5783685 (E.D. Pa. Oct. 5, 2015) is misplaced.  In *Gaudin*,

Judge Hornak dismissed the Secretary's complaint without prejudice because it only asserted

"factual allegations of ownership and broad control in the company" against the individual

defendant.  2017 WL 4685548, at *5.  Likewise, in *Richardson*, the plaintiff only alleged

ownership and broad control of the purported employer and there were "no allegations that [the

individual defendant] set the rate of employment, was involved in any way in a supervisory

capacity with the Plaintiffs, or whether he played any role whatsoever in the employment

decisions regarding the Plaintiffs."  2015 WL 5783685, at *2.  Here, unlike those cases, the

Secretary alleges that Mr. Adhikari, as an officer and owner of Intra-National, supervised the

DCWs, hired and firing employees, set their work schedules, and set their pay rates.  Compl. ¶ 4.

As stated above, these factual allegations of supervision and other related control measures

support the legal conclusion that the DCWs were employees of Defendants.

The Complaint sufficiently puts Defendants on notice of Plaintiff's theory.  The

Complaint alleges that Defendants operated a home healthcare company, employed DCWs to

care for Defendants' clients and ultimately failed to properly compensate these DCWs with

overtime premium for hours worked over 40 in a workweek in service of this home healthcare

company.  Therefore, Defendants respectfully requests that Defendants' Motion to Dismiss be

denied because the Complaint sufficiently alleges an employment relationship.

C. *The Complaint Sufficiently Pleads Defendants' Employees are Covered Under the FLSA.*

Plaintiff brings this action to recover unpaid overtime compensation and liquidated damages for Defendants' employees who worked in Pennsylvania. The Department of Labor's Cleveland Regional Solicitor's office is simultaneously bringing an action in the Southern District of Ohio against a related entity, Americare Health Services, LLC, and Mr. Adhikari to recover for Ohio employees. *See Department of Labor v. Americare Healthcare Services, LLC*, 2:21-cv-05076-EAS-KAJ (S.D. Ohio).

The Pennsylvania employees at issue in this case are covered by the FLSA. The FLSA extends coverage to employees by two means: (1) the employee himself may be engaged in commerce or in the production of goods for commerce (so-called "individual" coverage), *see* 29 U.S.C. § 207(a)(1)(1); or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce (so-called "enterprise coverage.") *See* 29 U.S.C. § 203(s)(1); *see also Genarie v. PRD Mgmt., Inc.*, No. CIV.A. 04-2082 (JBS), 2006 WL 436733, at *5 (D.N.J. Feb. 17, 2006) (outlining these tests). A plaintiff need only establish one or the other. *Katz v. DNC Servs. Corp.*, No. CV 16-5800, 2019 WL 4752056, at *7 (E.D. Pa. Sept. 27, 2019). Under Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), an employee is covered by the enterprise test if the employee works for an enterprise (a) that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (b) "whose annual gross volume of sales made or business done is not less than $500,000[.]"

Here, the Complaint sufficiently alleges that the affected employees are covered by the FLSA under both the individual coverage test and the enterprise coverage test. Quite simply, the affected workers are covered employees under the individual coverage test because they work as domestic home care workers. If an employee has "engaged in commerce or in the production of

goods for commerce" such that the employee directly "participat[ed] in the actual movement of persons or things in interstate commerce" whether those things be "tangibles or intangibles, and including information and intelligence," he or she is covered by the FLSA, regardless of the employer's status as an enterprise engaged in commerce.  *Katz*, No. CV 16-5800, 2019 WL 4752056, at *7.

Congress has specifically provided that the work performed by the affected workers in this case affects commerce.  Section 2(a) states in pertinent part, "[t]hat Congress further finds that the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). Domestic service, in turn, includes:

> [S]ervices of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use.

29 C.F.R. § 552.3.  In their brief, Defendants acknowledge that the Complaint alleges that the affected employees worked as "direct care workers" and "caregivers."  ECF 18 at 16.  Yet Defendants entirely ignore Congress's straightforward and directly applicable finding at 29 U.S.C. § 202(a) that domestic service affects interstate commerce.  Indeed,  Defendants make the specious argument that "direct care work" and "in-home caregiving" are "quintessentially local and intra-state in nature" and cite to cases involving restaurant workers and workers in engaged in mold and water damage restoration.  *Id.*  Defendants are wrong.  Defendants' citation to cases outside of the domestic service industry are totally inapposite and contrary to Congress's finding at 29 U.S.C. § 202(a).  Many courts have held that similar domestic care workers are covered by the FLSA simply by citing to 29 U.S.C. § 202(a).  *Franklin v. Jenn's Angels, LLC*, No. CV 21-399-SDD-SDJ, 2022 WL 69213, at *2 (M.D. La. Jan. 6, 2022); *Walsh v. Loving Kindness Healthcare Sys.*, LLC, No.

2:20-CV-1087-RJC, 2021 WL 2700852, at *1 (W.D. Pa. July 1, 2021). Therefore, the affected workers are covered by the FLSA under the individual coverage test.

Although the Complaint need only plead individual coverage, Plaintiff has also sufficiently averred Defendants were an enterprise engaged in commerce or in the production of goods for commerce. Defendants are again attempting to hold the Complaint's coverage pleading requirements to a stringent standard without any basis in case law. "At the motion to dismiss stage, it is frequently sufficient for a plaintiff to allege that the defendant was an enterprise engaged in commerce under the FLSA." *Nardelli v. Lamparski,* No. 2:20-CV-01723-CRE, 2021 WL 5989131, at *4 (W.D. Pa. Dec. 17, 2021). The Complaint asserts this allegation and therefore sufficiently pleads fact sufficient to satisfy the enterprise test. Compl. at ¶¶ 6, 8. Furthermore, the Complaint alleges Defendants are engaged in the business of providing home health care services, which, as set forth above affects commerce under 29 U.S.C. § 202(a). The Complaint further adequately pleads enterprise coverage because it alleges Defendants engaged in an enterprise with an annual gross volume of sales made or business done in an amount not less than $500,000. *Id.* at ¶ 6. Finally, Defendant misrepresents certain allegations of the Complaint referencing employees working in Pennsylvania and Defendants' actions in Pennsylvania. These allegations are meant to limit this action to Pennsylvania employees and allow the Department's other action in the Southern District of Ohio to recover for Ohio employees. These allegations do not limit the employees' or the employers' action to intrastate commerce. Therefore, the Complaint sufficiently pleads that the affected employees are covered by the FLSA.

### D.  The Complaint Sufficiently Pleads Willful Violations Of The FLSA.

Defendants have not moved to dismiss the Complaint's allegations that they violated the FLSA by failing to pay overtime premium pay for hours worked over 40 in a workweek, effectively conceding that these allegations are sufficient. Instead, Defendants only move to dismiss the

allegation that such violations were willful.  While the general statute of limitations for overtime violations under the FLSA is two years from the date the complaint is filed, an employer's willful conduct extends the back wage period by an additional year. 29 U.S.C. § 255(a).  Willfulness is a question of law.  *Selker Bros.*, 949 F.2d at 1292.

A violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the FLSA or showed reckless disregard for the legality of its conduct.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  An employer's awareness of possible FLSA violations, combined with an "indifference toward the requirements imposed" by the statute, supports a finding of willfulness.  *Garcia v. Tenafly Gourmet Farms, Inc.,* Civ. A. No. 11-6828, 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012).  The FLSA's knowledge requirement can be met by showing that the employer knew the conduct might be illegal but failed to make a good faith effort to investigate its legality.  *See Selker Bros., Inc.*, 949 F.2d at 1296 (finding willfulness where employer expressed concern about where it was legal to pay gas station operators a percentage of the gas sold instead of the minimum wage, but continued to do so because "the overhead was too high on paying the hourly rate").  Reckless disregard can be shown through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Mumby v. Pure Energy Services (USA), Inc.,* 636 F.3d 1266, 1270 (10th Cir. 2011) (*citing Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 68 (2007)).  A finding of willfulness does not necessarily require prior violations or litigation. *Reich v. Montfort, Inc.,* 144 F.3d 1329, 1334-35 (10th Cir. 1998).

The issue of willfulness is typically more appropriately resolved at the summary judgment phase and not at the motion to dismiss stage.  *Livers v. Nat'l Collegiate Athletic Ass'n*, No. CV 17-4271, 2018 WL 3609839, at *5 (E.D. Pa. July 26, 2018); *Rummel v. Highmark, Inc.*, No. 3:13-CV-87, 2013 WL 6055082, at *7 (W.D. Pa. Nov. 15, 2013).  The Secretary referenced willfulness

in anticipation of the Defendants pleading the statute of limitations as an affirmative defense. Plaintiffs may reference affirmative defenses but are not required to plead them, even if the Secretary will need to prove willfulness at trial. *See Hodgson v. Humphries*, 454 F.2d 1279, 1284 (10th Cir. 1972) (discussing history of 29 U.S.C § 255 statute of limitations and finding it to be an affirmative defense); *Marshall v. Gerwill, Inc.*, 495 F. Supp. 744, 755 n.11 (D. Md. 1980) (willfulness defense should be pleaded as an affirmative defense); *Ford v. Karpathoes, Inc.*, No. CIV.A. ELH-14-00824, 2014 WL 6621997, at *9 (D. Md. Nov. 20, 2014) (declining to consider willfulness on motion to dismiss). References to willfulness in an FLSA complaint are in anticipation of the affirmative defense, and not an element of the claim that can be dismissed. *Rose v. Harloe Mgmt. Corp.*, No. CV GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017). *See also Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (plaintiff is not required to overcome affirmative defenses on motion to dismiss).

Regardless, the Complaint pleads a textbook example of a willful violation. Again, Defendants mischaracterize the allegations of the Complaint and attempt to impose an unsupported stringent standard on the Complaint's willfulness allegations. Specifically, Defendants argue that Plaintiff had to plead that "Defendants knew that these adjustments were forbidden[.]" ECF 18 at 18. To the contrary, the Complaint may plead willfulness either through actual knowledge of illegal pay practices or reckless indifference to such practices.

Here, the Complaint does actually plead that Defendants violated the FLSA and knew that they were violating it when they did so. Defendants use their own supposedly "reasonable inferences" to mischaracterize the allegations of the Complaint and argue that the allegations supporting willfulness only support a violation. First, the Complaint alleges that Defendants paid their employees straight rates of pay for hours worked over 40 in a workweek, "despite being

*aware* of the overtime requirement." Compl. ¶ 13 (emphasis added). No inference need be made about this allegation. A plain reading of this allegation is that Defendants knew that they needed to pay overtime premium pay for hours worked over 40 in a workweek but chose to pay straight time for all hours worked. It would also be reckless to know about the overtime requirement and pay straight time for all hours worked. Second, the Complaint alleges that Defendants "***intentionally*** manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality paying the same rate for all hour" by a) "reducing certain employees' regular rates, but only in workweeks in which those certain employees worked in excess of forty hours per workweek" and b) "making deductions from their paychecks that cancelled out these employees' overtime premium pay." *Id.* (emphasis added). Again, no inferences are required, plausible or otherwise. A plain reading of these allegations is that Defendants knew about the requirement to pay overtime premium pay for hours worked over 40 and intentionally engaged in a duplicitous scheme to make their payroll appear as if Defendants were paying such overtime premium pay while actually continuing to pay straight time for overtime. Making such alterations would also be reckless. These allegations describe a willful violation of the FLSA. Although Defendants attempt to characterize these allegations as conclusions of law, these are allegations of fact. The Complaint is alleging that Defendants took action with a specific *mens rea*. These allegations of Defendants' knowledge are sufficient at this stage of the proceedings.

Indeed, courts have denied motions to dismiss where the plaintiff alleged that the employers' recordkeeping practices, or lack thereof, raise the possibility that the employer knew it was not properly paying overtime premium pay. See *Garcia*, No. 11-cv-6828, 2012 WL 715316, at *2 (denying motion to dismiss willfulness where plaintiff alleged "that he regularly worked far

in excess of forty hours per week as a grocery stocker, and that Defendants not only failed to pay Plaintiff any compensation for his overtime hours, but failed to keep a record of Plaintiff's hours or pay, and did not ask Plaintiff to clock in or out of work"); *see also Rummel*, 2013 WL 6055082, *8 (denying a motion to dismiss a willful FLSA violation where the complaint merely alleged that the employer knowingly required the employees to perform duties that could not be performed during their forty hours of compensated time).   Here, the Secretary's Complaint alleges that Defendants intentionally structured its payroll practices to avoid paying overtime premium pay, but create the appearance of compliance.   These payroll practice demonstrate that Defendants knew they had to pay an overtime premium pay but intentionally chose not to do so.   Therefore, the Secretary respectfully requests that the Court deny Defendants' motion to dismiss because the Complaint sufficiently pleads willfulness.

E.   . *The Complaint Sufficiently Pleads A Recordkeeping Violation Of The FLSA.*

Section 11(c) of the Act, 29 U.S.C. § 211(c), requires employers to "maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3rd Cir. 1984) (citing *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966)). The burden is on the employer to keep accurate wage and time records. *Dole v. Solid Waste Serv., Inc.*, 733 F. Supp. at 924. "The obligation is the employer's and it is absolute." *Caserta v Home Lines Agency, Inc.,* 273 F.2d 943, 946 (2d Cir. 1959), *see also McLaughlin v. DialAmerica Mktg., Inc.,* 716 F. Supp. 812, 822 (D.N.J. 1989) (explaining that the duty to maintain records as required by § 11(c) "is imposed upon the employer"). In addition, an employer may not simply delegate its recordkeeping duties to its employees. *Keubel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011).

Under the applicable regulations, pay records must include regular hourly rates of pay, total weekly straight-time earnings, total weekly overtime premium pay, and total deductions.   29

C.F.R. §§ 516.2(a)(6), 516.2(a)(8), 516.2(a)(9), 516.2(a)(10); *Tri-County Growers, Inc.*, 747 F.2d at 127.  The FLSA also requires employers to maintain and preserve for each individual employee records for each pay period that show the total deductions from wages paid.  29 C.F.R. § 516.2(a)(10). Employers must maintain these types of payroll records for at least three years.  29 C.F.R. § 516.5(a). As described below, Defendants failed to maintain the required records.

Defendants argue that the Complaint does not set forth a recordkeeping violation because this recordkeeping violation is purportedly contingent on the overtime violations.  As set forth above, Defendants have conceded that the Secretary sufficiently alleged an overtime violation.  It is also telling that, in their motion, Defendants only argue that their alleged pay practices do not constitute a willful violation and did not move on the actual underlying violation itself.

Regardless, while the same alleged acts support both an overtime violation and a recordkeeping violation, the Complaint sufficiently alleges an independent violation of the FLSA's recordkeeping requirements, separate from the overtime violations.  The Complaint alleges that Defendants violated the recordkeeping provisions of the FLSA by lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime.  In other words, the records are deceptive, and false, because they do not show the true regular rate of pay (*i.e.*, the amount the employee is paid per hour during a regular, non-overtime workweek), but rather a manipulated rate.  29 C.F.R. §§ 778.326, 778.500(b).  Manipulating regular rates and paying straight time for overtime violates the requirement to accurately record regular hourly rates of pay, total weekly straight-time earnings, and total weekly overtime premium pay.  29 C.F.R. §§ 516.2(a)(6), 516.2(a)(8), 516.2(a)(9).  Similarly, manipulating deductions to cancel out overtime pay violate the requirement to accurately record total deductions.  *Id.* § 516.2(a)(10).  Therefore,

the Secretary respectfully requests that the Court deny the motion to dismiss the claim for a recordkeeping violation.

     *F.  The Secretary May Recover For Any Continuing Violations Of The FLSA.*

     In their motion, Defendants included a short section arguing that the Secretary may not support its claims with statements from the prayer for relief regarding currently unidentified workers owed back wages.  The Secretary is not using these statements in its prayer for relief to support its claims for willful overtime and recordkeeping violations.  These violations are supported by the allegations of fact contained in the numbered paragraphs throughout the Complaint.

     Instead, these statements from the prayer for relief puts Defendants on notice that the Secretary may add additional individuals to the Schedule A if the Secretary discovers in the future that such additional individuals are owed back wages.  This procedure is commonplace in overtime cases.  *See Walsh v. Ideal Homecare Agency, LLC*, 20-cv-732-DSC (W.D. Pa) at ECF 74 (Secretary's Notice of Filing of Updated Schedule A).  Moreover, in FLSA enforcement actions, courts routinely allow the Secretary to pursue a claim for continuing violations because allegations of prior violations give rise to the reasonable inference that such violations may continue.  *Perez v. Davis Design & Dev., Inc.*, No. CIV.A. 13-1118, 2013 WL 6835095, at *8 (W.D. Pa. Dec. 23, 2013) (denying motion for judgment on the pleadings and allowing the Secretary to pursue a claim for a continuing violation based on the Secretary's similar allegations and prayers for relief).  Therefore, Defendants' offhand argument provides no basis to dismiss the Complaint and the Secretary may pursue a claim for any continuing violations.  And the alternative - requiring the Secretary to repeatedly file new complaints to encompass continuing violations – would be the antithesis of judicial inefficiency.

**III.     Conclusion**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.   The Complaint sufficiently pleads willful overtime and recordkeeping violations against both Defendants.

Respectfully submitted,

| | |
|---|---|
| Mailing Address: | **UNITED STATES DEPARTMENT OF LABOR** |
| | |
| U.S. Department of Labor | Seema Nanda |
| Office of the Regional Solicitor | Solicitor of Labor |
| 1835 Market Street | |
| Mailstop SOL/22 | Oscar L. Hampton III |
| Philadelphia, PA 19103 | Regional Solicitor |
| | |
| (215) 861-5142 (voice) | */s/ Ethan M. Dennis* |
| (215) 861-5162 (fax) | By: Ethan M. Dennis |
| | PA ID # 308871 |
| dennis.ethan.m@dol.gov | |
| | Attorneys for Plaintiff |
| Date: March 18, 2022 | |