# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTIN J. WALSH,
Secretary of Labor,
United States Department of Labor,

      Plaintiff,

v.

INTRA-NATIONAL HOME CARE, LLC,
and DILLI ADHIKARI,

      Defendants.

Civil Action No. 2:21-cv-01391-DSC

Hon. Judge David S. Cercone

**JURY TRIAL DEMANDED**

## DEFENDANTS' ANSWER, AFFIRMATIVE
## DEFENSES, AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT

Through their undersigned counsel, Defendants Intra-National Home Care, LLC ("Intra-National") and Dilli Adhikari ("Adhikari") (collectively, "Defendants" or "Counter-Plaintiffs") submit the following Answer, Affirmative Defenses, and Counterclaim to Plaintiff's Complaint:

The allegations made in Plaintiff's unnumbered opening paragraph constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny that they individually or collectively violated any section of the Fair Labor Standards Act of 1938, as amended ("FLSA" or the "Act"). Defendants deny that they individually or collectively failed to pay any legally owed wages. Accordingly, Defendants deny that Plaintiff is entitled to any relief.

1. The allegations in Paragraph 1 constitute legal conclusions to which no response is required. To the extent that a response may be required, it is admitted that this Court has jurisdiction over Plaintiff's asserted claims. However, Defendants deny that they individually or collectively violated the FLSA. Defendants further deny any remaining allegations contained in Paragraph 1.

2.  The allegations in Paragraph 2 constitute legal conclusions to which no response is required. To the extent that a response may be required, it is admitted that this Court is a proper venue for Plaintiff's asserted claims. Defendants, however, deny those claims and any other allegations contained in Paragraph 2.

3.  It is admitted that Intra-National is a limited liability company and has a registered address at 1620 Skyline Drive Pittsburgh, PA 15227. To be more specific, however, Intra-National's registered address is Apartment 18 at 1620 Skyline Drive Pittsburgh, PA 15227. Defendants further admit that Intra-National is engaged in a domestic homecare business operating within this Court's jurisdiction. Defendants deny any remaining allegations contained in Paragraph 3.

4.  It is admitted that Adhikari is Intra-National's Chief Executive Officer and owner. The remaining allegations in Paragraph 4 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the remaining allegations contained in Paragraph 4 of the Complaint.

5.  The allegations in Paragraph 5 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the allegations contained in Paragraph 5 of the Complaint.

6.  The allegations in Paragraph 6 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants admit that Intra-National's gross revenue exceeds $500,000. Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint.

7.  The allegations in Paragraph 7 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants admit that the direct

care workers or caregivers at issue in this matter provide in-home care services to Intra-National's clients within Pennsylvania. Defendants deny that these workers are "employees" as well as all other remaining allegations contained in Paragraph 7.

8. The allegations in Paragraph 8 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the allegations contained in Paragraph 8 of the Complaint.

9. The allegations in Paragraph 9 are so general that it is not possible to respond to it. Specifically, there is no indication of who these "certain [alleged] employees" may be. However, Defendants admit that some individuals may have worked more than forty hours in a workweek but deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. The allegations in Paragraph 10 are so general that it is not possible to respond to it. Specifically, there is no indication of who these "many" or "certain [alleged] employees" may be or what workweeks are at issue. Moreover, the allegations in Paragraph 10 include legal conclusions to which no response is required. To the extent that a response to the allegations may be required, Defendants admit that they facilitated reimbursement payments to some individuals at hourly rates ranging between approximately $12.50 and $13.00 an hour. Defendants further admit that they paid some individuals at those hourly rates for all hours worked in some workweeks. Defendants, however, deny that these or any other payments violated the FLSA. Defendants also deny any other allegations contained in Paragraph 10.

11. The allegations in Paragraph 11 are so general that it is not possible to respond to it. Specifically, there is no indication of who these "certain [alleged] employees" may be or

what workweeks are at issue. The allegations in Paragraph 11 include legal conclusions to which no response is required. To the extent that a response to the allegations may be required, Defendants admit that they reduced some individuals' hourly rates for reimbursement payments in certain workweeks. Defendants, however, deny that the rate reductions violated the FLSA, as courts and the Department of Labor have recognized in other lawsuits that rate reductions are permissible under the Act. Even if Defendants were employers and these unspecified workers were employees under the FLSA, the rate reductions also would not have violated the FLSA because the referenced individuals are exempt from the FLSA's overtime requirements pursuant to one or more of the Act's overtime exemptions, including the companionship (29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) exemptions. Defendants deny any other allegations contained in Paragraph 11.

12. The allegations in Paragraph 12 are so general that it is not possible to respond to it. Specifically, there is no indication of who these "certain [alleged] employees" may be or what workweeks are at issue. The allegations in Paragraph 12 include legal conclusions to which no response is required. To the extent that a response to the allegations may be required, Defendants admit that they made deductions to the paychecks of some individuals in some workweeks. Defendants, however, deny that the referenced deductions violated the FLSA. Even if the statute applied to the referenced conduct (and it does not), courts and the Department of Labor have recognized in other lawsuits that a worker's pay may be permissibly reduced under the Act. The deductions also would not have violated the FLSA because the relevant individuals are exempt from the FLSA's overtime requirements pursuant to one or more of the Act's overtime exemptions, including the companionship

(29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) exemptions. Defendants deny any other allegations contained in Paragraph 12.

13. The allegations in Paragraph 13 are so general that it is not possible to respond to it. Specifically, there is no indication of who these "certain [alleged] employees[]" may be or what workweeks are at issue. The allegations in Paragraph 13 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the allegations contained in Paragraph 13 of the Complaint. Defendants did not know or recklessly disregard any obligations under the FLSA Defendants' pay practices were also permissible under that statute, as courts and the Department of Labor have recognized in other lawsuits that a worker's pay may be permissibly reduced under the Act. Additionally, Defendants' pay practices did not violate the FLSA because the workers at issue in this matter are exempt from the FLSA's overtime requirements pursuant to one or more of the Act's exemptions, including the companionship (29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) exemptions.

14. The allegations in Paragraph 14 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15. The allegations in Paragraph 15 constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny the allegations contained in Paragraph 15 of the Complaint. The FLSA does not apply to the work at issue in this case. And while it may be Plaintiff's position that the alleged rate reductions and deductions to workers' pay violated the FLSA and resulted in Defendants' failure to maintain accurate payroll records, such alleged rate reductions and deductions were

permissible under the FLSA and in accordance with the Act's overtime exemptions and court decisions and the Department of Labor's position in other lawsuits. Accordingly, Defendants deny that they failed to make, keep, and preserve adequate and accurate records of the workers at issue in this matter.

The allegations in Plaintiff's "WHEREFORE" clause constitute legal conclusions to which no response is required. To the extent that a response may be required, Defendants deny that Plaintiff is entitled to relief of any kind. Accordingly, Defendants respectfully request that the Court deny Plaintiff's requested relief.

## AFFIRMATIVE DEFENSES

Defendants state the following affirmative defenses to Plaintiff's Complaint. By asserting these defenses, Defendants do not concede that they have the burden of proof as to any defense. Any allegations contained in the Complaint that Defendants did not specifically admit are expressly denied. To the extent that any asserted defenses or legal theories may be interpreted as being inconsistent, such defenses or legal theories are pleaded in the alternative. Without waiving these qualifications, Defendants state as follows:

### FIRST AFFIRMATIVE DEFENSE

1. The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2. The alleged injuries of the individuals for whom Plaintiff seeks relief are the result of the acts or omissions of entities or individuals other than Defendants.

### THIRD AFFIRMATIVE DEFENSE

3.  Defendants paid the individuals identified in Schedule A attached to the Complaint and all direct care workers in compliance with the statutory requirements of the FLSA and all available exemptions and exceptions.

### FOURTH AFFIRMATIVE DEFENSE

4.  Plaintiff's claims fail because the individuals for whom back wages are sought are exempt under 29 U.S. Code § 213(a)(15) and/or 29 U.S. Code § 213(b)(21).

### FIFTH AFFIRMATIVE DEFENSE

5.  Plaintiff's claims fail, in whole or in part, because the individuals for whom relief is sought have been paid all amounts Defendants legally owed to them.

### SIXTH AFFIRMATIVE DEFENSE

6.  Plaintiff's claims are barred in whole or in part by the provisions of Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259, because actions taken in connection with compensation were done in good faith and in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administration practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor.

### SEVENTH AFFIRMATIVE DEFENSE

7.  As Plaintiff has conceded (ECF No. 23, p. 3), Plaintiff's claims are barred in whole or in part by the applicable statute of limitations under the FLSA. Plaintiff is unable to make a showing of willful conduct by Defendants that would allow Plaintiff's claims to reach beyond the FLSA's applicable two-year statute of limitations.

## EIGHTH AFFIRMATIVE DEFENSE

8.  Plaintiff's claims for liquidated damages must fail as Defendants at all times acted in good faith to comply with the law and with reasonable grounds to believe that their actions did not violate the FLSA. Plaintiff cannot show that Defendants acted with malice or reckless indifference to the rights of Plaintiff or the individuals for whom Plaintiff seeks or may seek relief.

## NINTH AFFIRMATIVE DEFENSE

9.  Neither Defendant is an employer under the FLSA of the workers at issue in this case, including the individuals identified in the Schedule A attached to Plaintiff's Complaint.

## TENTH AFFIRMATIVE DEFENSE

10. The lawsuit is premised on an illegal and invalid regulation, 29 C.F.R. § 552.109, effective January 1, 2015, that purports to eliminate the companionship (29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) exemptions of the FLSA for so-called "third-party employers." This regulation, the findings upon which it is based, and the legal interpretations embodied in it are unlawful and unenforceable because they are arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. §702 ("APA"). The principle of narrow interpretation relied upon by the Labor Department in promulgating 29 C.F.R. § 552.109 has been rejected by the Supreme Court and is unreasonable It is therefore not entitled to any deference.

## ELEVENTH AFFIRMATIVE DEFENSE

11. Plaintiff's claims are barred by waiver, release, estoppel, unclean hands, and/or laches by those on whose behalf back wages are sought.

## DEMAND FOR TRIAL BY JURY

12. Defendants demand a trial by jury on all counts triable to a jury.

## RESERVATION OF RIGHTS

13. Defendants reserve the right to assert any affirmative or additional defenses they discover during the course of this litigation and pray that the Court afford them leave to amend their response to Plaintiff's Complaint upon a timely motion requesting the ability to amend the response.

## <u>COUNTERCLAIM</u>

Through their undersigned counsel, Defendants/Counter-Plaintiffs Intra-National Home Care, LLC ("Intra-National") and Dilli Adhikari ("Adhikari") allege as follows against Plaintiff/Counter-Defendant Martin J. Walsh, Secretary of Labor for the United States Department of Labor:

## PARTIES

1. Intra-National is a third-party agency that assists caregivers, who are also known as direct care workers, obtain Medicaid reimbursements. These caregivers provide in-home companionship and/or live-in assistance services to individuals eligible to receive these services through Pennsylvania's Medicaid Waiver Program known as Community HealthChoices or "CHC." Intra-National is a limited liability company and has a registered address at 1620 Skyline Drive, Apartment 18, Pittsburgh, PA 15227.

2. Adhikari is Intra-National's founder, owner, and CEO.

3. Counter-Defendant is the head of the United States Department of Labor ("DOL"). The DOL is a federal cabinet agency. The DOL conducts investigations of employers for FLSA violations as well as enforcement actions in federal court.

## INTRODUCTION

16. Counter-Plaintiffs seek a declaration that the caregivers at issue in the DOL's enforcement action against Counter-Plaintiffs and all caregivers who have or will provide services through Counter-Plaintiffs are exempt from the FLSA's overtime requirements pursuant to the Act's companionship exemption (29 U.S.C. § 213(a)(15)) and the live-in exemption (29 U.S.C. § 213(b)(21)).

17. Counter-Plaintiffs also seek a declaration that the revised regulation at issue in this action, 29 C.F.R. § 552.109, effective January 1, 2015, is unlawful and unenforceable because it was established in an unlawful, arbitrary, and capricious manner which violated the APA, 5 U.S.C. § 702.

18. The direct care workers at issue in this case provide in-home companionship and/or live-in care services to elderly or disabled family or household members of low-income families in Pennsylvania through CHC.

19. The vast majority of these direct care workers provide the in-home care services to their own family members or other individuals with whom they live or had a connection before they began providing the care services.

20. Adhikari and many of Intra-National's clients and their family member caregivers are former refugees who immigrated to the United States as part of the Bhutanese Refugee Resettlement Program.

21. To provide care through Pennsylvania's waiver program, family members must complete and file the necessary paperwork with the state to become direct care workers and collect payment for their services. This process can be difficult for these former refugees who do

not speak much, if any, English and who do not know how to navigate the bureaucracy of the waiver program.

22. As such, Adhikari saw a need to establish an agency to function as an intermediary between the caregivers and care recipients and the government. Accordingly, he founded Intra-National to complete the paperwork to register and perform payroll services for the care workers who provide such non-medical home care and companionship services.

23. From approximately 1975 to 2015, third-party agencies such as Intra-National and its predecessors relied on the companionship and live-in exemptions to the FLSA's overtime obligations as a backstop in the event that their services were deemed to be employment subject to the FLSA.

24. The plain language of these exemptions demonstrates that Congress intended for the exemptions to apply to caregivers who provide their services through third-party agencies.

25. In 2013, however, the DOL proposed a revised regulation that aimed to arbitrarily and capriciously preclude third-party agencies from claiming these exemptions.

26. This revised regulation went into effect around January 1, 2015 and upended four decades of consistent interpretation and application of the exemptions.

27. This regulation was illegal the day it was finalized, as it was based on unreasonable legal interpretations and failed to give the necessary explanations and factual support to satisfy the APA. Subsequent Supreme Court rulings have made even clearer that the revised regulation is invalid and unenforceable.

28. Beginning in 1945, courts sometimes applied a *narrow* standard of interpretation to FLSA exemptions. *A. H. Phillips v. Walling*, 324 U.S. 490 (1945).

29. However, in 2016 and 2018, the Supreme Court explained that this rule of construction was—and always had been—wrong, holding that, much like all other statutory provisions, FLSA exemptions must be *fairly* interpreted. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ("*Encino Motorcars I*"); *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) ("*Encino Motorcars II*").

30. In *Encino Motorcars II*, the Supreme Court confirmed:

> Because the FLSA gives no "textual indication" that its exemptions should be construed narrowly, "there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation."

> 138 S. Ct. at 1142.

31. The Supreme Court's holdings in *Encino Motorcars I* and *Encino Motorcars II* directly reject the interpretive approach use by the Labor Department in the 2015 rule, further underscoring its illegality.

32. When interpreted under this broader standard, the revised regulation is invalid and unenforceable.

33. If third-party agencies are not entitled to the exemptions, then homecare agencies may be unable to continue providing their services due to limited funding and increased liability under the FLSA. If these agencies are unable to provide their services, then many elderly and disabled care recipients will lose their care entirely or be forced into institutions to receive more expensive care.

34. Accordingly, Counter-Plaintiffs respectfully request the Court to enter a declaratory judgment finding that the caregivers at issue in this case are exempt from overtime wages pursuant to the FLSA's companionship and live-in exemptions.

## JURISDICTION AND VENUE

35. This counterclaim arises from the same issues and disputes presented in Counter-Defendant's Complaint and seeks to redress an ongoing legal threat that has resulted from Counter-Defendant's final agency determination that the caregivers who provide services through Intra-National are not exempt from the FLSA's overtime requirements pursuant to the companionship (29 U.S.C. §213(a)(15)) and/or live-in exemptions (29 U.S.C. §213(b)(21)) and are owed overtime wages and additional damages.

36. The Court has subject matter jurisdiction over the counterclaim pursuant to the APA, 5 U.S.C. § 701, *et seq.*

37. Counter-Defendant conducted an investigation of Intra-National and determined that the caregivers who provide services through Intra-National are Counter-Plaintiffs' employees and subject to the FLSA and its overtime requirements and owed back wages and additional damages based on Counter-Defendant's determination that those caregivers are not exempt under 29 U.S.C. § § 213(a)(15), 213(b)(21) or any other overtime exemption.

38. Counter-Defendant and the Department of Labor committed a final agency action when it published its final rule revising 29 C.F.R. § 552.109 in the Federal Register. *Application of the Fair Labor Standards Act to Domestic Service*, 78 Fed. Reg. 60454 (Oct. 1, 2013).

39. Counter-Defendant and the Department of Labor also committed a final agency action and determination when they communicated that the caregivers are not exempt and are owed back wages to Counter-Plaintiffs by telling them that they were in violation of the FLSA, threatening litigation, and calculating back wages that Counter-Defendant claimed are owed to the caregivers identified in Schedule A attached to the Complaint filed in this matter.

40. Counter-Defendant's determination that the caregivers are not exempt from the FLSA's overtime requirements marks the consummation of the agency's decision-making process and was not merely tentative or interlocutory in nature as demonstrated by Counter-Defendant having relied on that final agency determination to file his enforcement lawsuit against Counter-Plaintiffs.

41. Counter-Defendant's final revised rule and lawsuit implicate Counter-Plaintiffs' rights and obligations as to how Intra-National must be operated and from which legal consequences will flow.

42. Counter-Defendant's determination that the caregivers who provide services through Intra-National are not exempt from the FLSA's overtime requirements and are owed back wages plus additional damages has a direct effect on the day-to-day operation of Intra-National.

43. Counter-Defendant also took its final action concerning Counter-Plaintiffs when it concluded its investigation and determined that they violated Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA.

44. Counter-Defendant has conceded that representations made at the end of an investigation satisfy the finality factor required under the APA. *See Rhea Lana v. DOL*, 824 F.3d 1023, 1027 (D.C. Cir. 2016).

45. Counter-Defendant has also conceded that a challenge to a regulation is timely and appropriate if brought in defense of an enforcement action. *Intra-National Home Care, LLC et al. v. Dept. of Labor et al.*, Civil Action No.2:20-cv-1545 (W.D. Pa.) (ECF No. 45, p. 6).

46. Based upon the final agency actions, Counter-Defendant seeks to have the Court uphold his determination through his enforcement lawsuit and seeks back wages and liquidated damages for allegedly unpaid overtime wages owed to the caregivers.

47. The consummation of the investigation claimed to determine Counter-Plaintiffs' obligations to the caregivers under the FLSA, and came with claimed legal consequences, including: (1) assessment of penalties for the period of the investigation; (2) continuously accruing back wages and related penalties; and (3) open-ended exposure to penalties for the manner in which Intra-National is operating.

48. Counter-Defendant often assesses Civil Money Penalties ("CMPs") against "any person who repeatedly or willfully violates" the minimum wage or overtime provisions of the FLSA, as he assessed against Counter-Plaintiffs in this matter. 29 U.S.C. § 216(e)(2).

49. Counter-Defendant asserts in the Complaint that he made a final agency determination that Counter-Plaintiffs not only violated the FLSA but did so willfully, subjecting them to CMPs and the risk of additional CMPs in the future. (ECF No. 1, ¶ 8)

50. As the court found in *Rhea Lana v. DOL* (824 F.3d at 1027), Counter-Defendant's final determination creates additional legal consequences for Counter-Plaintiffs in that they risk CMPs being assessed against them as repeat and willful offenders if they operate in a manner contrary to Counter-Defendant's determination.

51. A declaratory judgment is necessary and required to resolve the identified and present threat Counter-Plaintiffs face regarding whether the caregivers who provide services through Intra-National are exempt from the FLSA's overtime requirements and implicates issues beyond just the caregivers and time frame addressed in Counter-Defendant's lawsuit against Counter-Plaintiffs.

4886-5502-4678 v1

52. This declaratory action will resolve Counter-Defendant's claims asserted in this matter, but is also broader than this action in that it seeks a determination that all caregivers who provide services through Intra-National, now and in the future, based on current practices and applicable law, are exempt from the FLSA's overtime requirements so that they can provide care services without the continued risk of devastating litigation costs, penalties, and additional damages.

53. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a), 28 U.S.C. § 1345, and 5 U.S.C. § 701 *et seq*.

54. Venue is proper in this Court pursuant to 28 U.S.C. 28 § 1391(b)(2) because a substantial part of the events or omissions giving rise to the asserted claims arose in this district.

## FACTUAL BACKGROUND

**Intra-National and the Labor Department's Investigation**

55. The caregivers at issue in this case provide companionship homecare services to care recipients who are elderly, infirm, or are otherwise unable to care for themselves without assistance.

56. Counter-Plaintiffs' caregivers also provide domestic services in a household in which they reside either permanently or for extended periods of time.

57. Based on the nature of the provided services, the caregivers are exempt from the FLSA's overtime requirements under the plain language of the Act's companionship and/or live-in exemptions (29 U.S.C. § 213(a)(15) and (21)).

58. Nevertheless, Intra-National and Adhikari complied with Counter-Defendant's investigation and provided documents and other requested material regarding Intra-National's payments to the caregivers.

59. Following Counter-Defendant's investigation of Intra-National, the DOL's wage and hour division informed Intra-National and Adhikari that the DOL determined they were violating Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA and owed the caregivers unpaid overtime wages and liquidated damages.

60. Based on the results of the investigation, Counter-Plaintiff filed this action against Intra-National and Adhikari and alleged that from at least June 4, 2017, through May 31, 2020, Intra-National and Adhikari failed to compensate certain employees who worked over 40 hours in a workweek at rates not less than one and one-half times their regular rates. (ECF No. 1, ¶ 9)

61. The uncertainty created by the DOL's determination, which conflicts with the FLSA's plain language, negatively affects Counter-Plaintiffs' ability to provide their services.

**The FLSA's Companionship and Live-In Exemptions**

62. In enacting the FLSA, Congress intended to establish a clear and expansive set of rules governing the employer-employee relationship. The FLSA serves to protect workers from minimum wage and overtime violations, late payment of wages, erroneous time and record-keeping practices, and retaliation.

63. The FLSA establishes requirements for payment of overtime wages at a rate of one and one-half times the regular rate for hours worked by an employee in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

64. The FLSA contains many exemptions from the Act's overtime requirements, including the companionship and live-in exemptions. *See* 29 U.S.C. § § 207, 213(a)(15), 213(b)(21).

65. Enacted in 1974, the companionship exemption and live-in exemption were established for domestic services employees.

66. The companionship exemption expressly applies to the type of workers at issue in this matter:

> Any employee employed on a casual basis in domestic service employment to provide babysitting services or *any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care of themselves* (as such terms are defined and delimited by regulations of the Secretary).

29 U.S.C. § 213(a)(15) (emphasis added).

67. The live-in exemption applies to care workers who live with the care recipient:

> Maximum hour requirements. The provisions of section 7 [29 USCS § 207] shall not apply with respect to— (21) *any employee who is employed in domestic service in a household and who resides in such household*.

29 U.S.C. § 219(b)(21) (emphasis added).

68. In 1975, the DOL confirmed that third-party agencies could avail themselves of the FLSA exemptions that are applicable to domestic workers.

69. The governing regulation provided that exempt companionship workers included those "who are employed by an employer or agency other than the family or household using their services." 29 C.F.R. § 552.109(a) (prior to 2015).

70. Exempt live-in workers include those "who reside in the household where they are employed." 29 C.F.R. § 552.102(a). The regulation provided that exempt live-in domestic service employees included those "employed by an employer or agency other than the family." 29 C.F.R. § 552.109(c) (prior to 2015).

71. Accordingly, the companionship exemption and live-in exemption applied to third-party agencies, such as Intra-National, and the care workers at issue in this matter.

72. Congress made clear its intent for the companionship and live-in exemptions to apply to third-party agencies. While several administrations attempted to revise or limit the companionship exemption through proposed legislation, those attempts failed.

73. In *Long Island Care at Home, Ltd. v. Coke*, the Supreme Court upheld the companionship exemption, its supporting regulations, and its application to third-party agencies as consistent with congressional intent underlying the FLSA. 551 U. S. 158 (2007).

74. In the *Long Island Care at Home, Ltd.* litigation, the DOL confirmed its position that the Companionship Exemption applied to third-party agencies: "If Congress had wanted to exclude employees of third-party employers from the exemption, it easily could have done so by expressly including a limitation based upon employer status, as it has done with other FLSA exemptions." *See* Brief for the United States as *Amicus Curiae* Supporting Petitioners, *Long Island Care at Home, Ltd. v. Coke*, No. 06-593, p. 19.

75. For 40 years, third-party agencies claimed and relied upon the companionship and live-in exemptions.

**The DOL's Revised Regulation**

76. In 2013, the DOL proposed revisions to 29 C.F.R. § 552.109, which purported to eliminate the right of third-party agencies to claim the companionship and live-in exemptions.

77. Under the revised regulation, the care recipients can still claim the exemptions, even if the direct care workers are jointly employed by the recipient and a third-party employer. *See* 29 C.F.R. § 552.109(a) and (c).

78. The revised regulation's selective application of the exemptions is contrary to the plain language of the exemptions, beyond the authority Congress granted to the DOL, the FLSA, the APA, and/or the principles of joint and several liability for joint employers under the FLSA.

79. During the comment period, the DOL received more than 26,000 comments on the proposed revised regulation. *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138, 142

(D.D.C. 2014). Several commenters expressed concern that the revised regulation would result in increased institutionalization of care recipients because the state programs would not adjust their reimbursement rates to account for the new overtime requirements. 78 FR 60454, 60485-60486. In response, the DOL pushed the burden onto the public entities to modify their policies and practices to "avoid discrimination or unjustified institutionalization." 78 FR at 60486.

80. Similarly, the DOL disregarded comments which illustrated that third-party agencies relied on the exemptions to provide needed care to the elderly and disabled with limited means to pay for these services. 78 FR 60454, 60459. The DOL responded by simply proclaiming that the revisions would benefit both the caregivers and care recipients. *Id.* at 60459-60460.

81. In 2014, a group of trade associations representing home care agencies filed a lawsuit challenging the revised regulations under the APA. *See Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014). The district court granted partial summary judgment in favor of the associations and held that the revised regulations was invalid because there was no basis to prohibit third-party agencies from claiming the companionship and live-in exemptions.

82. The district court wrote that the DOL "amazingly decided to try to do administratively what others had failed to achieve in either the Judiciary or the Congress" and effectively eliminate the exemptions through regulation. *Id.* at 142.

83. On appeal, the United States Court of Appeals for the District of Columbia Circuit vacated and remanded the district court's decision based on its determination that the revised regulations fell within the DOL's power to fill in the statutory gaps under the *Chevron* framework. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1090-93 (D.C. Cir. 2015).

84. In upholding the revised regulations, the D.C. Circuit Court relied heavily upon the notion that courts should *narrowly* interpret FLSA exemptions, as had been established by the Supreme Court in 1945. *Id.* at 1093 citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490 (1945).

85. The D.C. Circuit Court also determined that the exclusion of third-party agencies from the exemption was appropriate based upon an unsupported assumption that many direct care workers are not live-in care workers, but are instead hired, outside professionals. *Id.* at 1094. This is inaccurate. Care recipients routinely select family members to provide the care services. In fact, nearly all the direct care workers at issue in this action are family members of the care recipients.

86. On these spurious bases, the D.C. Circuit Court found the revised regulations to be valid, and they went into effect.

**The Supreme Court Subsequently Decided that FLSA Exemptions Must be <u>Fairly</u> Interpreted**

87. In 2016, the Supreme Court invalidated a 2011 DOL rule that removed an overtime exemption from a class of automotive dealership employees, consisting of service advisors. *Encino Motorcars I,* 579 U.S. 211 (2016). The Supreme Court held that the DOL rule undermined significant reliance interests in the automotive industry, by arbitrarily changing the treatment of the employees without an adequately reasoned explanation. *Id.*

88. Like the circumstances surrounding the DOL's revised regulation relating to the companionship and live-in exemptions, the DOL had unaccountably modified and amended regulations supporting the applicable exemption. Since at least 1973, the DOL and courts interpreted the exemption at issue in that case to include service advisors.

However, in 2011, the DOL, with little explanation, enacted a new regulation to exclude service advisors from the exemption. *Encino Motorcars I*, 579 U.S. at 214-18.

89. In *Encino Motorcars I*, the Supreme Court held that the DOL failed to offer a sufficient justification for its reversal of decades of regulatory interpretation and enforcement upon which the automotive industry relied. 579 U.S. at 222. The Supreme Court cited the negotiated compensation of service advisors based on the exemption, the significant costs to achieve compliance with the new rule, and the greatly enhanced FLSA liability, as considerable economic factors requiring invalidation of the 2011 rule. *Id.* at 222-23.

90. The Supreme Court remanded *Encino Motorcars I* to the Court of Appeals for the Ninth Circuit to interpret the statute "without placing controlling weight on the Department's 2011 regulation." *Id.* at 224.

91. In 2018, the case returned to the Supreme Court after the Ninth Circuit upheld the rule for the second time. *Encino Motorcars II*, 138 S. Ct. 1134.

92. In *Encino Motorcars II*, the Supreme Court clarified that the approach of interpreting FLSA exemptions narrowly was wrong, explaining that the exemptions must be fairly interpreted. 138 S. Ct. at 1142. In holding that the exemptions should be interpreted more broadly, the Court stated:

> [T]he FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. *See id.*, at ___, 137 S. Ct. 1718, 198 L. Ed. 2d 177, 184 ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage"). We thus have no license to give the exemption anything but a fair reading.

*Id.*

93. The Supreme Court also held that a plain reading of the statute established the applicability of the automotive dealership exemption to service advisors because the employees were

engaged in the type of work the statute specifically sought to exempt, even if not explicitly named within the statute. *Id.* at 1142-43.

94. Following the *Encino Motorcars I* and *Encino Motorcars II* decisions, the Court of Appeals for the Third Circuit held that "employees' rights are not the only ones at issue and, in fact, are not always separate from and at odds with their employers' interests" and emphasized the importance of predictability to business of the application and interpretation of the FLSA. *Sec'y U.S. Dep't of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) (citing *Encino Motorcars II*, 138 S. Ct. 1134).

95. In addition, the Court of Appeals for the Eighth Circuit confirmed that the exemptions are as much a part of the FLSA as the overtime pay requirements. *Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1047 n. 7 (8th Cir. 2020).

96. Several other Courts of Appeals have also applied the fair interpretation standard to FLSA exemption cases. *See Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 128-29 (2nd Cir. 2020); *Hurlburt v. Black*, 925 F.3d 154, 164 (4th Cir. 2019); *Owens v. Neovia Logistics, LLC*, 2020 U.S. App. LEXIS 17421, *2 (5th Cir. 2020) (nonprecedential).

97. The Court of Appeals for the Tenth Circuit applied the fair interpretation standard in ruling that Colorado's state law companionship exemption applied to companions employed by third-party agencies. *Jordan v. Maxim Healthcare Servs.*, 950 F.3d 724, 732-33, 754 (10th Cir. 2020).

98. In other cases, the DOL has embraced *Encino Motor Cars II*'s corrected interpretation of FLSA exemptions. *See* DOL Opinion 2020-10 (applying a fair reading to the retail and service establishment exemption to discuss the representative period for new employees).

99. Since the Supreme Court's 2018 *Encino Motorcars II* decision, it appears no court has applied the fair interpretation standard to the FLSA's companionship and live-in exemptions.

**The Revised Regulation Conflicts with a Fair Interpretation of the Exemptions**

100.    The revised regulations are invalid for a number of reasons, including because they are contrary to the plain language of the exemptions and congressional intent, rely on an improperly narrow and unreasonable interpretation of the FLSA, are not supported by necessary explanations and factual support to satisfy the APA, and exceed the Department of Labor's authority.

101.    This has been underscored and clarified by the Supreme Court's insistence on a fair interpretation requirement for FLSA exemptions.

102.    Like the DOL's arbitrary and capricious revisions to the automotive dealership exemption regulations at issue in *Encino Motorcars I* and *II*, the DOL unaccountably and unreasonably reversed decades of interpretation of the companionship and live-in exemptions.

103.    The DOL's attempt to preclude third-party agencies from claiming the companionship and live-in exemptions is contrary to the plain language and manifest intent of the FLSA and is beyond any authority granted to the DOL, including by Congress, the FLSA, and/or the APA.

104.    When Congress intends an employer to be excluded from a statutory exemption, the language of the statute makes that exclusion clear. *See e.g.* 29 U.S.C. § 213(a)(3) (exemption for "any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational

conference center"); 29 U.S.C. § 213(b)(3) (exemption for "any employee of a carrier by air"); 29 U.S.C. § 207(i) (exemption for "any employee of a retail or service establishment").

105.     Congress did not exclude any employers or types of employers in the statutory language of the companionship and live-in exemptions. Accordingly, if Congress had intended for third-party agencies to be excluded from these exemptions, it would have explicitly stated so in the exemption.

106.     Congress intended to exempt companions and live-in workers to keep in-home services affordable for the elderly and disabled, regardless of their employer. *See Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004); *Long Island Care at Home Ltd. v. Coke*, Brief for the United States as *Amicus Curiae*, Docket No. 06-593 (U.S. 2007) (citing public statements of the Small Business Administration and the Department of Health and Human Services).

107.     The DOL's revised regulation contradicts Congress' explicit rejection of prior attempts to preclude third-party agencies from claiming the companionship exemption. *See* Fair Home Health Care Act of 2007, H.R. 3582 and S. 2061, 110th Cong. (2007); Direct Care Job Quality Improvement Act of 2011, H.R. 2341 and S. 1273, 112th Cong. (2011); and Direct Care Workforce Empowerment Act, H.R. 5902 and S. 3696, 111th Cong. (2010).

108.     The revised regulation is contrary to and unreasonable under the broad language of the companionship and live-in exemptions and the congressional intent of minimizing institutionalization of the elderly and disabled.

4886-5502-4678 v1

109.    The revised regulation disrupts decades of reliance on the exemptions by third-party agencies and threatens to bankrupt the homecare industry and wholly ignores the rising costs of in-home care.

110.    Just as some commenters on the proposed revised regulation feared and predicted, Pennsylvania has failed to update the reimbursement rate it pays to homecare agencies for the caregivers' services to account for the DOL's revised overtime rules and still reimburses the agencies at a single, flat hourly rate for all hours of services provided by the caregivers, regardless of the number of hours worked in a workweek.

111.    Pennsylvania's flat reimbursement rate is the sole funding for the homecare agencies.

112.    The current flat reimbursement rate for personal assistance services in Southwestern Pennsylvania is $4.83 for every unit or 15-minutes of services. This amounts to $19.32 an hour.

113.    Within the confines of this flat hourly reimbursement rate, Defendants must cover substantial costs, including overhead, wages, and taxes.

114.    The problems created by Pennsylvania's flat reimbursement rate are compounded by the fact that the homecare agencies have limited authority to avoid overtime. For example, services coordinators controlled by private managed care organizations that contract with Pennsylvania to administer the CHC program determine the number of hours of services each care recipient must receive. The CHC program also grants the care recipients the right to choose their care providers. Counter-Plaintiffs' care recipient clients often use this right to demand that a certain family member provide all the hours of care services required by the service coordinators. The care recipients also often claim that their

religious beliefs prohibit non-family members from providing the intimate care services. Therefore, Counter-Plaintiffs are unable to split the hours of services required by the service coordinators among multiple caregivers. Consequently, Counter-Plaintiffs find themselves in a position in which the DOL demands that they pay an overtime premium to the workers while state funding does not provide for it and Counter-Plaintiffs have little control over the workers' hours to avoid the overtime. Accordingly, the DOL's revised overtime rules and Pennsylvania's failure to account for those rules put Counter-Plaintiffs in an arbitrary and legally untenably position.

115.     The purpose of the companionship and live-in exemptions, moreover, was to shift the elderly and disabled away from institutions and into their homes. *See* 78 Fed. Reg. 60458. The DOL, however, now erroneously attempts to use that intentional shift away from institutional care as a purported justification for prohibiting third-party agencies from claiming the exemptions. The DOL contends that direct care workers have left institutions to work vocationally at residences, without any evidence to support this assertion. *See* 78 Fed. Reg. 60455. The DOL acts as though it is unaware that the increasing number of in-home care workers are just as likely to be family and household members caring for a large and elderly population.

116.     Additionally, the DOL ignores the economic reality that institutional workers care for many residents and patients at institutions that have adequate financial resources to pay overtime hours. The in-home care worker typically cares for only one care recipient and is paid from a single source of funding that does not account for overtime wage requirements.

117.     The DOL also ignores the fact that the caregivers who work through Intra-National are family and household members of the care recipients. In these instances, the caregivers

27

are paid by a social welfare program for assisting family members. These assistance services are those that are generally expected of a family member caring for another. Such caregivers are not "vocational" employees working outside of their homes.

118.     Thus, the DOL's stance is contrary to the plain language of the FLSA and the realities of in-home care and Pennsylvania's CHC program, and unnecessarily threatens the continued viability of the homecare industry. The regulation is arbitrary, capricious, and contrary to law. It therefore must be set aside.

## COUNTERCLAIM FOR DECLARATORY RELIEF

119.     Counter-Plaintiffs incorporate by reference their responses to the allegations made in Counter-Defendant's Complaint, affirmative defenses, and the preceding paragraphs of their counterclaim.

120.     An actual controversy has arisen and now exists between Counter-Plaintiffs and Counter-Defendant regarding Counter-Plaintiffs' rights and duties relating to their operations and whether they must pay overtime wages to the caregivers who provide and/or will provide services through Intra-National.

121.     The DOL's actions, as described above, cause on-going harm to Counter-Plaintiffs and wrongfully and unlawfully denies them their right to claim the FLSA's companionship and live-in exemptions.

122.     Under the APA, a court must "set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

123.     The current version of 29 C.F.R. § 552.109 conflicts with the FLSA's purpose and plain language and the Supreme Court's interpretation of the FLSA.

124.    Therefore, Counter-Plaintiffs request a judicial determination that the caregivers who provide services through Counter-Plaintiffs are exempt under the companionship and live-in exemptions and that the DOL's revised regulation is invalid when construed using a fair, rather than narrow, interpretation of the exemptions.

**PRAYER FOR RELIEF**

WHEREFORE Counter-Plaintiffs respectfully pray for judgment against Counter-Defendant and that a judgment be entered:

(a) finding that the caregivers who provide their services through Counter-Plaintiffs are exempt from overtime wages under 29 U.S.C. § 213(a)(15) and (b)(21);

(b) finding that the current version of 29 C.F.R. § 552.109 is invalid; and

(c) granting Counter-Plaintiffs any other relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 28, 2022                    /s/ Bruce C. Fox
                                        Bruce C. Fox (PA 42576)
                                        Andrew J. Horowitz (PA 311949)
                                        George C. Thompson (PA 316626)
                                        OBERMAYER REBMANN
                                        MAXWELL & HIPPEL LLP
                                        525 William Penn Place, Suite 1710
                                        Pittsburgh, PA 15219
                                        (412) 566-1500 (Phone)
                                        (412) 281-1530 (Fax)
                                        bruce.fox@obermayer.com
                                        andrew.horowitz@obermayer.com
                                        george.thompson@obermayer.com

                                        *Counsel for Defendants/Counter-Plaintiffs*