**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARTIN J. WALSH, | ) |
| SECRETARY OF LABOR, | ) |
| UNITED STATES DEPARTMENT OF LABOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 2:21-cv-1391 |
| | ) |
| INTRA-NATIONAL HOME CARE, LLC, AND | ) |
| DILLI ADHIKARI, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**SECRETARY'S MEMORANDUM IN SUPPORT OF HIS
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM**

## INTRODUCTION

From at least June 2017 through May 31, 2020, Defendants Intra-National Home Care, LLC ("Intra-National") and its owner and Chief Executive Officer, Dilli Adhikari ("Adhikari"), operated a "domestic home care business" within the jurisdiction of this Court. (Answer, ECF 36, at ¶¶ 3-4). During this period, Defendants denied overtime premium pay to hundreds of home care workers (hereinafter "Direct Care Workers"). (*See* Schedule A, ECF 1-2). The Direct Care Workers provided in-home care services for seniors or individuals with disabilities who received such services, which were often funded through Medicaid. (Counterclaim, ECF 36, at ¶ 1, 18). Defendants often paid the Direct Care Workers between $12.50 and $13.00 per hour. (Answer at ¶ 10). On many occasions, Defendants paid no overtime premiums, even for Direct Care Workers who worked for more than 50 hours per week. (Answer at ¶ 10). On other occasions, Defendants lowered the hourly rates of pay for Direct Care Workers in overtime workweeks and then paid overtime based on the lower rate (Answer ¶ 11). The Fair Labor Standards Act ("FLSA") required Defendants to pay overtime premiums to the Direct Care Workers whenever they worked more than forty hours per week, and not to manipulate pay rates to effectively avoid complying with that obligation. The Department's legislative regulations explicitly state that third party employers of home care workers like Defendants may not claim the FLSA's companionship services or live-in domestic service employee exemptions. 29 C.F.R. § 552.109. On October 15, 2021, the Secretary of Labor filed this lawsuit to recover the overtime premium pay and liquidated damages owed to these Direct Care Workers. (ECF 1).

Defendants' Counterclaim asserts a misguided and untimely challenge to the Department of Labor's legislative regulations. These legislative regulations were challenged and upheld repeatedly before this lawsuit. A facial challenge to the 2013 rulemaking that included this

regulation filed shortly after that rulemaking was promulgated resulted in the D.C. Circuit finding the regulation valid.  *See Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084 (D.C. Cir. 2015).  A virtually-identical challenge to the one at issue here was rejected by this Court in *Walsh v. Ideal Homecare Agency, LLC et al.*, 2021 WL 4437483, at *3-4 (W.D. Pa. Sept. 28, 2021) (hereinafter *Ideal*).

And, perhaps most notably, a facial challenge to the regulation filed by Defendants during the investigation that led to this lawsuit was rejected as untimely in *Intra-National Home Care, LLC, et al. v. U.S. Department of Labor*, 2:20-cv-01545 (WSH) ECF 70. In that case, Defendants asserted in a separate declaratory judgment action in this District an identical claim to the counter-claim at issue here. That Court dismissed the action, holding that it was barred by the statute of limitations. *Intra-National Home Care, LLC, et al. v. U.S. Department of Labor*, 2:20-cv-01545 (WSH) ECF 70. Defendants are not entitled a second bite at the apple by pursuing a duplicative claim here. Regardless, their counterclaim would fail for the same reason.

Defendants' counterclaim also raises an as-applied challenge, asking the court to declare that the Secretary's "determination" that Defendants cannot claim the exemption for their employees in this case is invalid. As this Court clearly held in *Ideal,* neither the Administrative Procedure Act nor the FLSA provides jurisdiction for this Court to enter such declaratory relief. Because the only conceivable waiver of sovereign immunity – the APA – does not apply, sovereign immunity bars the claim.  Defendants may raise their argument as an affirmative defense to the Secretary's complaint, although their argument lacks merit. Accordingly, this Court should dismiss their as-applied Counterclaim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

I.       **Statutory and Regulatory Framework.**

The FLSA was enacted "to 'protect all covered workers from substandard wages and oppressive working hours.'" *Encino Motorcars v. Navarro*, 136 S. Ct. 2117, 2121 (2016) (*Encino I*) (*quoting Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 739 (1981)). The FLSA "requires employers to pay any covered employee at least a minimum wage of $7.25 per hour . . . and to pay any covered employee at least one-and-one-half times the employee's regular wages when the employee works more than forty hours in a week." *Molina-Aranda v. Black Magic Enters.*, 983 F.3d 779, 786 (5th Cir. 2020) (citing 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1)).

"Employers who violate these provisions are 'liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.'" *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting 29 U.S.C. § 216(b)). An "employer" for purposes of the FLSA includes "'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 148 (3d Cir. 2014) (quoting 29 U.S.C. § 203(d)).

The FLSA created "a Wage and Hour Division" acting "under the direction of an Administrator.'" *Sec'y of U.S. Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 424 n.13 (3d Cir. 2017) (quoting 29 U.S.C. § 204(a)). The FLSA grants the Administrator authority to investigate wages, hours, and other conditions and practices of employment to determine whether any employer has violated the Act. See 29 U.S.C. § 211(a). "'The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.'" *Am. Future Sys.*, 873 F.3d at 433 n.72 (quoting 29 U.S.C. § 216(c)).

Congress amended the FLSA in 1974 to explicitly extend the Act's minimum wage and overtime pay requirements to domestic service employees. *See* 29 U.S.C. §§ 202(a), 206(f), 207(l); Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55. The 1974 Amendments also "exempted defined categories of domestic-service workers from certain FLSA protections." *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1088 (D.C. Cir. 2015); 29 U.S.C. §§ 213(a)(15) and (b)(21). The companionship services exemption, FLSA Section 213(a)(15), "provides that the FLSA's minimum-wage and overtime requirements shall not apply with respect to 'any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (<u>as such terms are defined and delimited by regulations of the Secretary</u>).'" *Home Care Ass'n* at 1088 (emphasis added). The live-in domestic service worker exemption, Section 213(b)(21), "provides that the [FLSA's] overtime protections shall not apply with respect to 'any employee who is employed in domestic service in a household and who resides in such household.'" *Id.*

In addition to the specific grant of authority contained in § 213(a)(15) authorizing the Secretary to define and delimit the terms of the companionship services exemption, the "1974 Amendments included a broad grant of rulemaking authority empowering the Secretary of Labor to 'prescribe necessary rules, regulations, and orders with regard to the amendments made by this Act.'" *Id. (quoting* Pub. L. No. 93-529, § 29(b), 88 Stat. 55, 76 (1974)). As explained by the Supreme Court, these Congressional delegations include the authority to determine whether the companionship services exemption applies to employees of third-party employers. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007). The Secretary is authorized by virtue of those grants of rulemaking authority to determine whether "the FLSA [should] cover all companionship workers paid by third parties"; whether "the FLSA [should] cover some such

companionship workers, perhaps those working for some (say, large but not small) private agencies, or those hired by a son or daughter to help an aged or infirm mother living in a distant city"; or whether the FLSA should cover no such workers. *Coke*, 551 U.S. at 167-68. Pursuant to these delegations of authority, the Department has promulgated legislative regulations implementing the companionship services and live-in domestic service workers exemptions. *See, e.g.*, 29 C.F.R. § 552.109.

In 2013, the Department amended its third-party employer legislative regulation, 29 C.F.R. § 552.109, via notice-and-comment rulemaking, to provide that third-party employers of companionship service employees may not avail themselves of the exemptions for companionship services or for live-in domestic service  workers. *See* Final Rule, Application of the Fair Labor  Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,477 (Oct. 1, 2013) (hereinafter "Home Care Rule"); *see also Home Care Ass'n*, 799 F.3d at 1084. The rule was challenged under the APA shortly after it was promulgated, and the D.C. Circuit held that it was valid. *See generally Home Care Ass'n*, 799 F.3d 1084.[1] Intra-National is a third-party employer of domestic service employees, and, under the Department's regulations as amended by the Home Care Rule (hereinafter "legislative regulations")[2] it cannot avail itself of the exemption for companionship services or for live-in companionship service workers.

In a separate lawsuit filed in this District, Defendants have pursued, and lost, a declaratory judgment action against the Secretary asserting the invalidity of the legislative regulations  in *Intra-National Home Care, LLC, et al. v. U.S. Department of Labor*, 2022 WL

---

[1] The Supreme Court denied certiorari in *Home Care Ass'n of Am. v. Weil*, 579 U.S. 927 (2016).

[2] The 2013 regulations also modified the regulation describing which types of duties constitute exempt "companionship services." The regulation states, in part, that "[t]he term companionship services ... includes the provision of care"—such as "meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care"—only if that care "does not exceed 20 percent of the total hours worked." 29 CFR 552.6. Even if Defendants were eligible to claim the companionship services exemption, it is unlikely the Direct Care Workers would satisfy this duties test.

2829828 (W.D. Pa. July 20, 2022)(WSH). On May 7, 2021, the Secretary filed a renewed motion

to dismiss the lawsuit. (20-cv-1545 at ECF 33). On July 22, 2022, Judge Hardy granted the

Secretary's motion to dismiss that lawsuit under Fed. R. Civ. P. 12(b)(6), holding that Intra-

National's facial challenge to the legislative regulations was barred by the statute of limitations.

*Id.* at *6.  Defendants' facial challenge to the regulation in their Counterclaim therefore

represents an attempt to re-litigate an identical claim, which is impermissible claim-splitting. *See*

*Schneider v. United States,* 301 F. App'x 187, 189 (3d Cir.2008) (*per curiam*) (claim-splitting is

impermissible).

## II.   This Court Should Dismiss Defendants' As-Applied Counterclaim Under Rule 12(b)(1) and 12(b)(6).

Federal Rule of Civil Procedure 12(b)(1) authorizes courts to dismiss complaints for

"lack of subject matter jurisdiction." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.

2007). Federal Rule of Civil Procedure 12(b)(6) provides that a party may bring "a motion to

dismiss for failure to state a claim upon which relief can be granted." *Id.* Courts "confronted with

motions to dismiss under both Rules 12(b)(1) and 12(b)(6) . . . ordinarily ought to decide the

former before broaching the latter" because "assessment of the merits becomes a matter of purely

academic interest" if "the court lacks subject matter jurisdiction." *Deniz v, Mun. of Guaynabo*,

285 F.3d 142, 149-50 (1st Cir. 2002).

A.   Defendants' As-Applied Counterclaim is Barred by Sovereign Immunity.

In a similar case, this Court acknowledged that sovereign immunity bars a counterclaim

against the Secretary raising an as-applied challenge to the legislative regulations. *Ideal* at 3. In

*Ideal*, the Secretary sued a "health care business" whose "employees provide in-home health care

services" to its clients. *Walsh v. Ideal Homecare Agency, LLC*, No. 2:20CV732, 2021 WL

4437483, at *1 (W.D. Pa. Sept. 28, 2021). The same is true in this case. Complaint, ECF 1, at ¶

7, hereinafter "Complaint." In *Ideal*, as in this case, these employees worked more than forty hours per week, but the employer failed to pay them overtime premiums, in violation of the FLSA. *Ideal* at *1; Complaint ¶ 7. In *Ideal*, as in this case, many employees worked more than 50 hours per week without receiving overtime premium pay. *Ideal* at *1; Complaint at ¶ 8. When the Secretary sued *Ideal* for these and other FLSA violations, *Ideal* asserted a counterclaim challenging the third party employer regulation. The Court found this challenge to be barred by sovereign immunity: "the United States enjoys sovereign immunity" from such challenges unless that immunity was waived by the APA. *Ideal*, Exhibit A, at 2.

The reason for the prohibition is clear: "[T]he United States and its agencies are generally immune from suit under the doctrine of sovereign immunity." *Gentile v. SEC*, 974 F.3d 311, 315 (3d Cir. 2020). "And absent congressional authorization through an unequivocal statutory waiver it is 'unquestioned' that the federal government retains sovereign immunity." *Id.* (*quoting Alden v. Maine*, 527 U.S. 706, 749 (1999)). "[A] claim of sovereign immunity . . . raises a jurisdictional defense." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). The dismissal of a complaint "for lack of subject matter jurisdiction" thus is proper in any action in which "[t]he United States . . . [is] the real party in interest" and in which "sovereign immunity is not waived." *See Kennedy v. Comm'r*, 790 Fed. App'x. 447, 448-49 (3d Cir. 2019). Any waiver of sovereign immunity must be "unequivocally expressed" to be valid. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992). In the absence of a valid waiver of sovereign immunity, such claims which would be "properly dismissed . . . for lack of subject matter jurisdiction." *Kennedy*, 790 F. App'x at 449.

B.      Sovereign Immunity has not been Waived by the Administrative Procedure Act.

Defendants assert jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.* (Counterclaim at ¶ 36),[3] but the APA's limited sovereign immunity waiver does not apply here because there has been no final agency action. The APA represents a limited waiver of sovereign immunity without which courts lack jurisdiction to review agency actions (absent statutory authorization, which is not included in the FLSA). *Bowen v. Massachusetts*, 487 U.S. 879, 892 (1988).

In *Ideal*, a virtually identical case, this Court unequivocally rejected Ideal's claim that the APA waived sovereign immunity. Exhibit A at p. 2. The Court explained:

> [T]here is long-standing and well-settled authority recognizing that where, as here, the Secretary has initiated an enforcement action pursuant to the FLSA that arises out of an investigation as to whether the defendant's employees are within the scope of an exemption, the proper vehicle for reviewing the propriety of the Secretary's determination that the exemption does not apply is through an affirmative defense in the enforcement action; final agency action is lacking under the APA in such circumstances.

*Id.* at 3. The Court explained that "'Whether [the Secretary's] determination of the question of whether the [employer] is entitled to exemption claimed under 29 U.S.C.A. § 213(a)(2)(iv) is right or wrong is to be determined in the [enforcement] action brought by the Secretary and not in this type of action (and therefore the proceedings for declaratory relief are dismissed). *Id.* quoting *Wohl Shoe Co. v. Wirtz,* 246 F. Supp. 821, 822 (E.D. Mo. 1965). This Court cited ample

---

[3] Defendants also assert jurisdiction under 28 U.S.C. § 1367(a), which covers supplemental jurisdiction and jurisdiction when the United States is a party. That statute provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This obviously has no effect on the Secretary's sovereign immunity. Similarly, Defendants' reference to 28 U.S.C. § 1345, which gives this Court jurisdiction over cases in which the United States is a party, does not waive sovereign immunity. In addition, neither of these jurisdictional statutes provides a cause of action, and so Defendants' Counterclaim must still be dismissed under Rules 12(b)(1) and 12(b)(6).

precedent for this point. *Id. citing Tejidos Konfort, Inc. v. McAuliffe,* 290 F. Supp. 748, 751 (D.

P.R. 1968); *Reich v. Westerner Products, Inc.*, 877 F. Supp. 493, 495 (D. Az. 1994);*Usery v.*

*Brandel*, 1981 WL 2305, *1 (April 8, 1981 (W.D. Mich., April 8, 1981); *Walsh v. Peters*, et al.,

2021 WL 1662467, *7 (D. Md., April 28, 2021).

     1.  Defendants' Counterclaim Challenges Decisions that are Committed to the
        Secretary's Discretion by Law.

     The APA does not provide jurisdiction over Defendants' as applied challenge because the

statute does not waive sovereign immunity for, or authorize, "judicial review of 'agency action

[that] is committed to agency discretion by law.'" *Gentile*, 974 F.3d  311, 316 (3d Cir. 2020)

(*quoting* 5 U.S.C. § 702). The decision of an agency "to exercise its investigative power . . .

involves a complicated balancing of several factors peculiarly within the agency's expertise,

including the allocation of scarce resources." *Id.* at 319. Such a decision "overcomes the 'basic

presumption' in favor of judicial review of agency action" and is therefore "a matter committed

to agency discretion by law" unless "Congress by statute or [the agency] by regulation [has]

articulated specific standards governing a decision to initiate an investigation under [the

applicable statute]," thereby providing "judicially manageable standards" for evaluating such a

decision. *Id*. (*quoting Abbott Labs. v. Gardener*, 387 U.S. 136, 140 (1967)). Therefore, an

"agency decision [on] whether to take enforcement action" is "generally committed to agency

discretion." *Harmon Cove Condo. Ass'n v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987). Such a

decision is "immune from judicial review under the [APA]" unless "'the substantive statute has

provided guidelines for the agency to follow in exercising its enforcement powers.'" *Id.* at 952

(*quoting Heckler v. Chaney*, 470 U.S. 821, 833 (1985)).

     The FLSA does not provide any "[j]udicially manageable standards" for evaluating a

decision of DOL "on whether to investigate" a particular employer for possible violations of the

FLSA. *See Gentile*, 974 F.3d at 319. The FLSA instead "grants the Administrator of DOL's Wage and Hour Division broad [investigative] authority," *see La Piedad*, 894 F.3d at 950, by providing:

> The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to [the FLSA], and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA], or which may aid in the enforcement of the provisions of [the FLSA].

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 409 n.1 (1984) (*quoting* 29 U.S.C. § 211(a)).

The FLSA also provides no "'guidelines for [DOL] to follow in exercising its enforcement powers'" under the FLSA. *See Harmon Cove*, 815 F.2d at 952 (*quoting Heckler*, 470 U.S. at 833). It instead provides that "'[t]he Secretary [of Labor] may bring an action in any court of competent jurisdiction to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.'" *Am. Future Sys.*, 873 F.3d at 433 n.72 (quoting 29 U.S.C. § 216(c)). For this reason, Defendants have not validly invoked this Court's jurisdiction over their claims that the Secretary: (1) investigated them and concluded that they violated the FLSA; (2) shared its investigative findings with them and "threaten[ed] litigation;" (3) determined that Defendants' Direct Care Workers were not exempt from overtime; (4) filed this lawsuit; (5) had discretion to impose Civil Money Penalties (Counterclaim at ¶¶ 37, and 39 – 41, 43, and 48-49). *See Walsh v. Peters, et al.,* No. CV GLR-18-2933, 2021 WL 1662467, at *4 (D. Md. Apr. 28, 2021).

Although articulated in terms of declaratory relief, Defendants seek a "judicial determination" that the Direct Care Workers "are exempt under the companionship and live-in exemptions" and that the legislative regulations are invalid. (ECF 36 at ¶ 124). The effect of such

a "determination" would be to prevent the Secretary from pursuing this lawsuit to recover back wages and liquidated damages owed to the Direct Care Workers. The decision to file a lawsuit against Defendants is committed to the Secretary's discretion by law, such that this Court lacks jurisdiction to review it. All these issues are committed to agency discretion, and the government has not waived its sovereign immunity to Defendants' challenges under the APA.

2.      The Secretary has not taken final agency action against Defendants.

Not only are these investigative and enforcement decisions committed to the Secretary's discretion, but also the actions are unreviewable because they are not final. Under the APA, a court may only review an administrative action if it is "final." 5 U.S.C. § 704 (authorizing judicial review only of "final agency actions for which there is no adequate remedy at law"); *accord Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Defendants base their Counterclaim on the Department's investigation, subsequent filing of this enforcement action, or assessment of Civil Money Penalties, none of these constitute a "final agency action" reviewable under the APA, 5 U.S.C. § 704. *See, e.g., FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239–45 (1980); *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir.1994); *Herman*, 37 F. Supp. 2d at 1120.

As noted above, this Court ruled on this exact issue in *Ideal* and held that the APA's waiver or sovereign immunity does not apply when an employer brings an APA challenge in response to a Department of Labor enforcement lawsuit. *Ideal*, No. 2:20-cv-00732 (W.D. Pa. Sept. 28, 2021 (DSC), ECF 76, at page 2-3, attached as Exhibit A. Under the APA, Defendants would be required to meet two prongs to adequately allege final agency action: "First, the action must mark the "consummation" of the agency's decision-making process, —it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or

obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (*citing Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Final agency action requires more than a preliminary or tentative act. *Spear*, 520 U.S. 154. "The core question is whether the agency has completed its decision-making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992). In fact, the Third Circuit has repeatedly held that parties may not challenge agency investigations under the APA. *See, e.g., Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. Temple Univ. Clinical Faculty Practice Plans Temple Univ. Sch. of Med. v. Rehnquist*, 46 F. App'x 124, 127 (3d Cir. 2002) (audit did not constitute final agency action); *accord CEC Energy Co., Inc. v. Public Service Commission of the Virgin Islands*, 891 F.2d 1107, 1110 (3d Cir. 1989). Thus, Defendants have not valid challenge to the investigation itself.

The Secretary also did not take final agency action by notifying Defendants of its investigative findings and back wage computations. The same claim was rejected in a recent decision issued in the District of Maryland in *Peters,* 2021 WL 1662467, *7. In *Peters*, the employer brought a counterclaim asserting that Wage and Hour had engaged in final agency action by issuing a WH-56, a form notifying the employer of the amount of back wages that Wage and Hour found to be owed to each employee. *Id.* After reviewing the many cases holding that investigative findings were non-final and non-reviewable under the APA, the Court ultimately concluded that no legal consequences flowed from the DOL's investigative findings. *Id.* at 12. The *Peters* Court also explained that there was no need for an APA review because "there is an adequate remedy to the agency's action in court—this very lawsuit." *Id.*

12

None of the "consequences" that Defendants assert resulted from the investigation have any legal effect. Defendants complain of possible "(1) assessment of penalties for the period of the investigation; (2) continuously accruing back wages and related penalties; and (3) open-ended exposure to penalties for the manner in which Intra-National is operating." (Counterclaim at ¶ 47). They complain that the Secretary's determination that its Direct Care Workers are entitled to overtime compensation "has a direct effect on the day-to-day operations of Intra-National." (Counterclaim at ¶ 42). The only effect of Wage and Hour's determination that Defendants had violated the FLSA was to make Defendants "aware that . . . [laws] are not being met and to trigger the statutory mechanism for informal accommodation which precedes any formal enforcement measures." *West Penn Power Co. v. Train*, 522 F.2d 302, 311 (3d Cir. 1975), *cert. denied*, 426 U.S. 947 (1976) (holding that a Notice of Violation of the Clean Air Act was not final agency action). No legal consequences flowed from Wage and Hour's back wages computations, and, in fact, Defendants were free to ignore them entirely. Indeed, this lawsuit, like any lawsuit filed by the Secretary under the FLSA, was necessary because Wage and Hour's investigation does not constitute a final agency action, nor does it legally compel Defendants to remedy their violations.

The Secretary also has not taken final agency action regarding Civil Money Penalties, despite Defendants' protestations in paragraphs 47 to 50. Agency action is not final if the adverse effects of the action depend "on the contingency of future administrative action." *DRG Funding Corp. v. Sec'y of Hous. & Urban Dev.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (internal quotation marks and citation omitted); *see also Am. Airlines, Inc. v. Transp. Sec. Admin.*, 665 F.3d 170, 174 (D.C. Cir. 2011); *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006). The APA specifically states that district courts only have the authority to

review agency actions only when they are not under "any form of reconsideration." 5 U.S.C. §

704. "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable

is subject to review on the review of the final agency action." *Id.* The FLSA explicitly states that

civil money penalty assessments are not final when employers file a timely contest:

> Any administrative determination by the Secretary of the amount of any penalty under this subsection **shall be final, unless within 15 days after receipt of notice thereof by certified mail the person charged with the violation takes exception to the determination** that the violations for which the penalty is imposed occurred, in which event final determination of the penalty shall be made in an administrative proceeding after opportunity for hearing in accordance with section 554 of Title 5 and regulations to be promulgated by the Secretary.

29 U.S.C. § 216(e)(4)(emphasis added); *accord* 29 C.F.R. § 680.6(a). Although Wage and Hour

did assess a CMP in this case, Intra-National requested a hearing. That hearing has not yet been

held.  No CMP hearing has been held in this case, and so the Secretary has taken no final action

regarding penalties.[4]  *See IHCC*, attached, at pp. 12-13.

Nor has the Secretary "conceded" in *Rhea Lana* that any "representations made at the end

of an investigation" are final and subject to APA review. (Counterclaim at ¶ 44 and 50, *citing*

*Rhea Lana, Inc. v. Secretary of Labor*, 824 F.3d 1023 (D.C. Cir. 2016)). The *Rhea Lana* case

involved a situation where the Secretary had decided not to file a lawsuit seeking judicial review

of the case. There, the acting Administrator of the Wage and Hour Division had issued letters

stating that Rhea Lana's use of unpaid volunteer workers to organize consignment sales violated

the FLSA. *Rhea Lana*, 824 F.3d at 1025–26. Ultimately, the Department of Labor "decided to

conclude the matter by putting the company on notice and taking no further action." *Id.* at 1026.

---

[4] Typically, the Secretary will seek to delay a CMP hearing when the violation is also subject to a district court enforcement action. The issues decided by the district court overlap significantly with the issues in the CMP action, so the outcome of the district court case will typically result in a streamlined CMP proceeding (or resolve the CMP issues entirely).

In response to the employer's APA lawsuit seeking review of the matter, the Secretary conceded that the letter "completed the agency's decision-making on the consignor-volunteers' status as employees." *Id.* at 1027. This is not the case here.

Nor was filing this lawsuit final agency action. Filing a lawsuit does not "effect a final disposition" of a legal dispute and is therefore unreviewable under the APA. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). Again, *Ideal* was a nearly identical case in which the Court stated clearly that "final agency action is lacking under the APA" when the Secretary has filed suit to enforce the FLSA. Exhibit A at 2.

> There is long-standing and well-settled authority recognizing that where, as here, the Secretary has initiated an enforcement action pursuant to the FLSA that arises out of an investigation as to whether the defendant's employees are within the scope of an exemption, the proper vehicle for reviewing the propriety of the Secretary's determination that the exemption does not apply is through an affirmative defense in the enforcement action; final agency action is lacking under the APA in such circumstances and the United States enjoys sovereign immunity from any other attempt to invoke subject-matter jurisdiction.

Exhibit A at p. 2 *accord Walsh v. Peters*, No. CV GLR-18-2933, 2021 WL 1662467, at *4 (D. Md. Apr. 28, 2021). Defendants were under no obligation to settle with the Secretary and remain free to defend, during this litigation, their policy of paying straight time compensation for overtime hours worked. Under the U.S. Supreme Court's "pragmatic approach to finality . . . . an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S.Ct. 1807, 1815 (2016) (citing 5 U.S.C. § 704). Obviously, here, there has been no final determination of Defendants' liability; that issue will be decided when this Court decides whether the Secretary has proven the allegations in his complaint. Under *Hawkes*, Defendants have a more than adequate alternative to APA review without their Counterclaim; they can simply defend themselves against the allegations in the Secretary's Complaint. To the extent that the resolution of this lawsuit

"implicates issues" beyond the specific time period and particular employees involved, (Counterclaim at 50 – 51), that is no different than any other FLSA enforcement litigation. *See Wohl Shoe Co. v. Wirtz*, 246 F.Supp. 821, 822 (E.D. Mo. 1965) (holding that correctness of the Secretary's determination regarding whether employers were entitled to an exemption under the FLSA must be determined in an action brought by the Secretary and not in actions brought by employers for declaratory judgment; holding that sovereign immunity would bar such declaratory judgment actions).

None of the actions Defendants challenge here are final or reviewable under the APA. They are barred by sovereign immunity and subject to dismissal under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

> ### C.   Defendants have not Pleaded an FLSA Claim Upon Which Relief May be Granted.

The FLSA does not allow employers to seek declaratory judgments. *See Wheeler*, 399 F.3d at 244 (permitting only the Secretary and employees to maintain causes of action under the FLSA); *Wohl Shoe Co.*, 246 F. Supp. at, 822 (holding that a determination of the Secretary that employers were not entitled to claim an exemption under the FLSA could be considered in an action brought by the Secretary but not in an action for declaratory judgment brought by the employers). Complaints are subject to dismissal under Rule 12(b)(6) for failure to state a claim if their allegations "could not raise a claim of entitlement to relief." *Staska v. Stecker,* No. 4:18-cv-3119, 2019 WL 3378737, at *2 (D. Neb. Aug. 12, 2019). Complaints subject to dismissal under that rule thus include complaints seeking "equitable relief [that] is not available" under the statute giving rise to the dispute. *See Owner-Operator Indep. Drivers Ass'n v. USIS Com. Servs., Inc.*, 537 F.3d 1184, 1188 n.4 (10th Cir. 2008). Accordingly, an employer seeking to avoid FLSA liability may not sue the

Secretary for declaratory relief. *See, e.g., Herman*, 37 F.Supp. 2d at 1119, *Usery*, 1981 WL

2305 at *1, *Wohl Shoe Co.*, 246 F.Supp at 821-22. Defendants have therefore failed to state a

claim upon which relief may be granted.

### III. Defendants' Facial Challenge to the Department's Regulations is Improper Claim-Splitting and is Time-Barred.

#### A.   In a Separate Lawsuit, this Court Dismissed Defendants' Facial Challenge as Untimely.

In a separate lawsuit filed in this District, Intra-National pursued the same facial

challenge to the domestic service employee regulations it is trying to pursue here. *Intra-National*

*Home Care, LLC, et al. v. U.S. Department of Labor*, 2:20-cv-01545 (WSH). In that case, Intra-

National argued that the third party employer regulation "conflicts with the text of the FLSA and

otherwise is contrary to law [and] that the DOL did not provide adequate justification or

explanation when promulgating the current version of 29 C.F.R. § 552.109, thus rendering it

arbitrary and capricious." *Id.* at ECF 70 p. 9.  On July 20, 2022, Judge W. Scott Hardy issued a

final order under Federal Rule of Civil Procedure 12(b)(6) dismissing that case as time-barred.

(20-cv-1545 at ECF 70). Judge Hardy explained that the facial challenge to the regulation was

untimely under the APA's six-year statute of limitations. *Id.* at page 11.[5] The six-year statute of

limitations had started running in October 2013 when DOL published the final regulation and

expired before Intra-National filed suit in 2020. *Id.*

---

[5] Judge Hardy explained that "the Secretary engaged in final agency action by promulgating the Home Care Rule on October 1, 2013."The statute of limitations under the APA for raising a facial challenge to a regulation is six years. See 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues")." Thus, any facial challenge would be time-barred.

Even if Intra-National were to appeal Judge Hardy's order,[6] its attempt to pursue the same claim in this lawsuit would be impermissible claim splitting. Defendants may not lose an argument in one case and reassert it in another, trying to obtain an inconsistent but favorable result. *See, e.g., Schneider v. United States,* 301 F. App'x 187, 189 (3d Cir.2008) (*per curiam*) (plaintiff suing Housing and Urban Development whose claim was dismissed could not file a second nearly identical claim against the same parties with virtually identical allegations).

B.  Defendants' Facial Challenge is Time-Barred in the Case as Well.

While this Court can dismiss Defendants' facial challenge solely on the basis that it constitutes improper claim-splitting, Judge Hardy was correct that Intra-National's facial challenge is time-barred. "'[E]very civil action commenced against the United States . . . [is] barred unless the complaint is filed within six years after the right of action first accrues.'" *Paucar v. Att'y Gen. of U.S.*, 545 F. App'x 121, 124 (3d Cir. 2013) (quoting 28 U.S.C. § 2401(a)). "[T]he six-year statute of limitations applies to claims brought pursuant to the APA." *Id.* "Generally, 'the right of action first accrues on the date of the final agency action.'" *Id.* (*quoting Harris v. FAA*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004)). "[A] policy-based facial challenge to the government's decision" likewise "must be brought within six years of the decision." *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991)). Not only will "[t]he grounds for such challenges . . . usually be apparent to any interested citizen within a

---

[6] Unless Defendants moved to alter or amend this judgment or file an appeal, it will become a final order, at which time *res judicata* or collateral estoppel would apply. "Res judicata requires three factors: 1) a final judgment on the merits in a prior suit involving 2) the same parties or their privies, and 3) a subsequent suit based on the same cause of action." *Williams v. Lehigh Cnty. Dep't of Corr.*, 19 F. Supp. 2d 409, 411 (E.D. Pa. 1998); *accord Board of Trustees v. Centra,* 983 F.2d 495, 504 (3d Cir.1992). All three factors will be met once Judge Hardy's order becomes final.

six-year period following promulgation of the decision" but "[t]he government's interest in

finality out-weighs a late- comer's desire to protest the agency's action as a matter of policy or

procedure." *Id.*

Here, Defendants claim that the legislative regulations are invalid under the APA because it

conflicts with the text of the FLSA. Defendants' claim is untimely because DOL issued the

current version of § 552.109 on October 1, 2013, nearly nine years ago. *See* Application of the

Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60454, 60454 (Oct. 1, 2013). Intra-

National's argument that the legislative regulations  disrupted its business model is nonsense;

Intra-National did not even exist until at earliest 2013. (Case No. 20-1545, ECF 70 at page 11).

They should have developed a business model that complied with applicable law. Their failure to

do so is not a defense.

This time bar is not subject to equitable tolling in this case. While Intra-National did

not argue equitable tolling in its case before Judge Hardy, in a footnote Judge Hardy

expressed serious reservations about whether the doctrine would apply. *Intra-National* at 12,

n.9. Judge Hardy provided the following explanation:

> The Third Circuit has identified the following "three principal situations in which
> equitable tolling is appropriate": (1) if a defendant has actively misled a plaintiff which
> causes non-compliance with an applicable limitations provision; (2) if a plaintiff has in
> some extraordinary way been prevented from asserting a right; or (3) if a plaintiff has
> timely asserted a right mistakenly in the wrong forum.  *Podobnik v. U.S. Postal Serv.,*
> *409 F.3d 584, 591 (3d Cir. 2005); see also Miller v. Beneficial Mgmt. Corp.*, 977 F.2d
> 834, 845 (3d Cir. 1992). However, "[e]quitable tolling is a rare remedy to be applied in
> unusual circumstances, not a cure-all for an entirely common state of affairs."  *Wallace*
> *v. Kato*, 549 U.S. 384, 396 (2007).  Moreover, Plaintiffs will not receive the benefit of
> equitable tolling unless due diligence is exercised in pursing and preserving their
> claims.  *See Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)
> (*citing Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). Plaintiffs bear the
> burden of proving the application of such tolling.  *See Courtney v. LaSalle Univ.*, 124
> F.3d 499, 505 (3d Cir. 1997).  Plaintiffs have not attempted to meet this burden, and the
> record is devoid of any indication that the burden could be satisfied.

Intra-National at 12, n.9.

Nothing about the Supreme Court's decisions in *Encino I* or *II* justifies tolling the six-year time bar of 28 U.S.C. § 2410(a). This Court has already rejected the argument that *Encino II* invalidates the legislative regulations, finding the challenge to be "misguided." *Walsh v. Ideal Homecare Agency*, LLC, No. 2:20-CV-732, 2021 WL 4437483, at *3 (W.D. Pa. Sept. 28, 2021) (Judge David Stewart Cercone). This is because *Encino I* and *II* have little, if any, relevance to the issues here, and Defendants conflate the two decisions.  The language from the *Encino II* decision to which Defendants point—that FLSA exemptions should be given a "fair reading"—was in reference to a tool of statutory interpretation for FLSA exemptions,  *See* 138 S. Ct. at 1141-42 (addressing 29 U.S.C. § 213(b)(10)(A)). *Encino II* did not apply to a regulation, and in particular not a regulation promulgated pursuant to an explicit delegation from Congress.[7]  The Department is not aware of a single case in which *Encino II* has been used to vacate a notice-and-comment regulation. The Supreme Court's instruction regarding "a fair . . . interpretation" was meant to provide a general guidepost when considering FLSA exemptions, not to rewrite any agency regulations. *See Encino II*, 138 S. Ct. at 1142 (rejecting the idea that construing exemptions narrowly is "a useful guidepost for interpreting [exemptions to] the FLSA").  Despite Defendants' claims, *Encino II* does not effectively allow all employers to expand the meaning of exemptions they wish to claim in response to FLSA enforcement actions.  *See, e.g., Brown v. Nexus Bus. Sols.,*

---

[7] Defendants attempt unsuccessfully to draw a parallel between this case and *Encino II* by conflating *Encino I* and *Encino II*. *Encino I* addressed a regulation as to which—unlike here, where the final rule amending the regulations was 104 Federal Register pages long, *see* 78 Fed. Reg. at 60,454-557—the Department explained its rationale for changing its mind in five sentences.  Critically, *Encino I* did not vacate a regulation due to the narrow construction principle; rather, it vacated the regulation because the Department did not adequately explain its change in position.  It was not until *Encino II*, when the Court was interpreting the statute itself, that the judicial interpretive principle of narrow construction was addressed.

*LLC*, 488 F. Supp. 3d 1287, 1307 (N.D. Ga. 2020) (rejecting defendant's attempt to apply *Encino II* "to interpreting the broad reach of the automobile sales exemption" because defendant did not meet the regulatory definition and thus could not qualify for the exemption).

For the same reasons, this Court has also already rejected Defendants' challenge to the Department's regulations on the merits. Again, as this very Court has held, reviewing a similar case with similar parties and a virtually identical challenge, "the *Encino II* Court did not overrule the longstanding principles governing judicial review of agency action undertaken pursuant to delegated authorization expressly granted by statute." *Ideal*, Exhibit A, at 3. The Court concluded that "to the contrary, a review of the full history of the case confirms that the Court unequivocally left this firmly established body of law intact." *Id*.

Moreover, nothing about *Encino II* suggests or could support an assertion that it was intended to disturb the Supreme Court's holding in *Long Island Care at Home, Ltd. v. Coke*, which specifically concluded that the broad grant of definitional authority given to DOL by Congress includes the authority to address the "third party" question. *See Coke*, 551 U.S. at 167- 68 (explaining that Congress "expressly instruct[ed] the agency to work out the details . . . [of] whether to include workers paid by third parties within the scope of the definitions" of those companionship services employees exempt from the FLSA's minimum wage and overtime protections, and that "Congress intended its broad grant of definitional authority . . . to include the authority to answer" questions like "whether, or how, the definition should apply to workers paid by third parties").[8] This Court already held that nothing in *Encino* means the

---

[8] Moreover, the Supreme Court in *Encino I* made explicit reference to *Long Island Care at Home, Ltd. v. Coke*, noting that *Coke* appropriately accorded *Chevron* deference to the Department. *See Encino I*, 136 S. Ct. at 2125.

Department's legislative regulations are not entitled to *Chevron* deference: "*Encino II* does not

establish the principle that all prior DOL regulations that were promulgated with reference to or

under the auspices of the narrow construction rule are now forms of arbitrary and capricious

agency action that are to be stripped of Chevron deference." *Ideal* at *4.

   Contrary to Defendants' claim, the Secretary has not "conceded that a challenge to a

regulation is timely and appropriate if brought in defense of an enforcement action."

(Counterclaim ¶ 44, *citing Intra-National Home Care, LLC et al. v. Dept. of Labor et al.*, Civil

Action No.2:20-cv-1545 (W.D. Pa.) (ECF No. 45, p. 6)). Here is the Secretary's actual

argument from pages 5 and 6 of that brief:

> [A] party may raise a facial challenge in defense of a specific enforcement action.
> *ITServe*, 443 F. Supp. 3d at 32. And when a party challenges a particular application of
> the rule, an as-applied challenge, courts sometimes calculate the statute of limitations
> from the date of the last fact required for the as-applied challenge. For example, the case
> cited by Plaintiffs, *Herr v. U.S. Forest Service,* involved an as-applied challenge where
> the Forest Service sent a letter to lakefront property-owners informing them that the
> Service planned to enforce a regulation on Michigan's Crooked Lake that banned
> motorboats on part of the lake. 803 F.3d 809, 813 (6th Cir. 2015). The plaintiffs in Herr
> challenged the Forest Service's application of the motorboat rule to property owners of
> Crooked Lake because it allegedly conflicted with a Michigan state law that gave
> lakefront real estate owners "a property right to use the entire surface of the lake for
> boating and sailing." *Id.* at 813. Because Herr involved a narrow, as-applied challenge
> about how a federal regulation interacted with state property law, the court found that the
> statute of limitations began to run (at the earliest) when the Herrs first purchased their
> lakefront property. The holding of this non-binding, out-of-circuit case does not help
> Plaintiffs because the Herr plaintiffs made an as-applied challenge—not a facial
> challenge—that did not accrue until the Herrs owned lakefront property, whereas
> Plaintiffs here bring a facial challenge that does not depend on later facts before their
> claims accrued.

*Id.* at pages 5 – 6. The passage from the Secretary's brief says exactly the <u>opposite</u> of what

Defendants claim it says. Defendants' facial challenge to the Department's regulation is

untimely, as Judge Hardy has already ruled, and barred by the doctrine of sovereign

immunity. It fails to state a claim under the APA because it does not address final agency

action.  Defendants' as-applied Counterclaim should therefore be dismissed pursuant to Rule

12(b)(6) if it is not already dismissed pursuant to Rule 12(b)(1).

<u>**CONCLUSION**</u>

Defendants' facial challenge to the Department's regulation has already been rejected as untimely by Judge Hardy in a separate lawsuit that Defendants filed expressly seeking that review. This Court must not allow Defendants a second bite at that apple. Even if this Court decided to allow Intra-National to raise the issue again, the proper mechanism would be to consider it as an affirmative defense, albeit a meritless one.  Defendants' challenge to the third party employer regulation as the Secretary is applying it in this particular case is barred by sovereign immunity, as this Court ruled in the *Ideal* case. In addition, Defendants have failed to state a claim upon which relief may be granted under either the FLSA or the APA. Accordingly, this Court should dismiss the Counterclaim under Federal Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

Mailing Address:                        **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor                 Seema Nanda
Office of the Regional Solicitor         Solicitor of Labor
1835 Market Street
Mailstop SOL/22                          Oscar L. Hampton III
Philadelphia, PA 19103                   Regional Solicitor

(215) 861-5128 (voice)                   */s/ Andrea Luby*
(215) 861-5162 (fax)                     By: Andrea Luby
                                         PA ID #

Luby.Andrea@dol.gov

Date: August 30, 2022                    Brian M. Boynton
                                         Principal Deputy Assistant Attorney General
                                         Civil Division

Brad P. Rosenberg
Assistant Director
Federal Programs Branch

Zachary A. Avallone
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Phone:  (202) 514-2705
Fax:  (202) 616-8470
Email:  zachary.a.avallone@usdoj.gov

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on August 30, 2022, I electronically filed the foregoing with the Clerk of

Court by using the CM/ECF system, which will provide notice and an electronic link to this

document to the following attorneys of record:

Bruce C. Fox

bruce.fox@obermayer.com

George Thompson

george.thompson@obermayer.com

*/s/ Andrea Luby*